BOB MEYER AND THE ESTATE OF CRAIG CURTIS, APPELLANTS, *v.* ESTATE OF FRANCES SWAIN, CARL SWAIN, INDIVIDUALLY AND AS HEIR AT LAW OF FRANCES SWAIN, KATHLEEN D. MERS, AS GUARDIAN AD LITEM FOR CARL J. SWAIN, AND CATHERINE I. SWAIN, MINORS AND HEIRS AT LAW OF FRANCES SWAIN, RESPONDENTS.

No. 18280

October 26, 1988                                        763 P.2d 337

*Perry, Hebert & Spann,* and *John A. Furlong,* Reno, for Appellant Bob Meyer.

*Thorndal, Backus & Maupin,* and *Stephen C. Balkenbush,* Reno, for Appellant Estate of Craig Curtis.

*Robison, Belaustegui and Robb,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Appellant Craig Curtis and respondent Frances Swain died as a result of injuries sustained in a motorcycle-pedestrian collision. A jury determined that Curtis was entirely responsible for the collision and that Swain was fault free. Because the trial court erred in refusing to instruct the jury on Swain's statutory duty as a pedestrian to remain off the highway while intoxicated while at the same time giving a comparable instruction on the unlawfulness of Curtis's driving while under the influence and because the evidence clearly shows that Swain's negligence, in some degree, contributed to the collision that caused her death, we reverse the judgment of the trial court.

The focal error, the central unfairness in this case, lies in the trial court's giving of an instruction that Curtis's intoxication rendered him negligent as a matter of law, while refusing to give a corresponding instruction relating to Swain's intoxication. There was evidence at the trial that both Curtis and Swain had been drinking prior to the fatal collision. Swain requested and was granted an instruction on the unlawfulness of Curtis's use of alcohol. That instruction, given at the request of the Swains, reads:

> There was in force at the time of the occurrence in question, a Nevada statute which makes it unlawful for any person who has a 0.10% or more by weight of alcohol in his blood to drive a motorcycle on a public highway. The statute further provides that it is unlawful for any person who is an habitual user of or under the influence of any controlled substance, or is under the combined influence of intoxicating liquor and a controlled substance to drive a motorcycle on a public highway.

A comparable instruction based on NRS 484.379 was requested by Curtis and Meyer, one which read as follows:

> There was in force at the time of the occurrence in question laws which read in relevant part as follows:

It is unlawful for any pedestrian who is under the influence of intoxicating liquors to be within the traveled portion of any highway.

This instruction was refused.

It is well established that a party is entitled to have the jury instructed on all of his theories that are supported by the evidence. *See* Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983). In reviewing the propriety of the trial court's refusing to give the instruction on pedestrian intoxication, the relevant inquiry is simply whether there was evidence adduced at trial to support the theory underlying the instruction. Rather clearly, such evidence was adduced at the trial.

We note initially that for the purposes of criminal prosecutions for driving under the influence of intoxicating liquor, NRS 484.381(2)(b) provides that while a defendant who has a blood-alcohol content of between .05 and .10 percent is not presumed to be under the influence of intoxicating liquor, nevertheless, "this fact may be considered with other competent evidence in determining the guilt or innocence of the defendant." NRS 484.381(2)(b). The evidence in this case shows that Frances Swain's blood-alcohol content was between .05 and .10 percent. There was testimony by the investigating police officer that Swain's blood-alcohol level at the time the accident occurred was possibly as high as .068. Swain's measured blood-alcohol level of .05, taken over an hour after the accident, would indicate that her blood-alcohol must have exceeded the .05 level to some degree at the time the accident occurred.[1] This evidence, in combination with competent evidence that Swain had been drinking wine prior to the accident, clearly supports Curtis's and Meyer's theory that Swain was negligent as a matter of law by virtue of being an intoxicated pedestrian in the traveled portion of a highway.

The instruction relative to Swain's statutory duty as a pedestrian to remain off the highway while intoxicated should have been given by the trial court. It was error not to do so. Having found such error, our next task is to determine whether the error was prejudicial, requiring reversal. We hold that it was.

As will be seen from the recounting of the facts that follows, it is highly probable, if not inescapable, that Frances Swain was in some way responsible for the motorcycle-pedestrian collision. Thus, the jury's finding that Swain was "0%" negligent leads us to look for an explanation from some source other than her

---

[1]Medical records show that Frances Swain lived for approximately twenty-five minutes after the accident, and we know that there was some metabolic activity and dissipation of alcohol during this time.

conduct on the evening in question. One readily available explanation is that the jury was not told that it was just as *"unlawful"* for Swain to be walking on the highway while under the influence of liquor as it was for Curtis to be driving under the influence. Had the jury been told Swain's intoxication had the same legal effect and carried the same *unlawfulness* as Curtis's, it probably would not have reached its flawed conclusion that Swain was free of negligence. We are satisfied that the refusal of the trial court to give the requested parallel instruction was not only error, but prejudicial error that, to a high degree of probability, affected the outcome of this case insofar as the issue of comparative negligence is concerned, namely the jury's conclusion that Swain was zero percent negligent.

Aside from the specific error discussed above, we further hold that the jury's attribution of one-hundred percent negligence to Curtis and zero percent negligence to Swain is not only irrational but manifestly unjust. In our jurisprudence, manifest injustice is present when a verdict " 'strikes the mind, at first blush, as manifestly and palpably contrary to the evidence.' " Kroeger Properties v. Silver State Title, 102 Nev. 112, 715 P.2d 1328 (1986). That Frances Swain was in no way at fault, in no way negligently responsible for her own death, is palpably contrary to the evidence, which we now examine.

At the time Swain was struck by Curtis's motorcycle, she was jaywalking across a public road on a very dark night with her back to oncoming traffic. The motorcyclist had the right of way. Swain had been drinking wine, and more than one hour after the accident she still had 0.05 percent alcohol in her blood. The investigating police officer testified as to the joint responsibility of the parties for the accident, and when asked what factors he saw as "contributing to the accident," he told the jury: "The drinking on the part of both parties, and the fact that the pedestrian was crossing at an area not designated for pedestrian traffic."

There is strong evidence that Swain was not being prudently attentive to vehicular traffic as she jaywalked across the highway in the manner stated. In crossing the highway Swain had the duty to " 'look in the direction or directions of anticipated danger, and to continue to be alert to safeguard against injury.' " Fennell v. Miller, 94 Nev. 528, 531, 583 P.2d 455, 457 (1978). It can be claimed that Swain looked carefully in both directions before starting to cross the highway and that she continued to be alert to traffic as she proceeded across the highway, but this is extremely improbable. She and her husband Carl crossed the highway together. Carl testified that he did not remember either stopping or looking before entering the road, although he said it would

have been unusual for them not to have done so. The couple crossed the road obliquely with their backs, to some degree at least, exposed to traffic traveling in the direction Curtis was traveling. Neither of the Swains saw the motorcycle, which from all indications had its headlight on, before it struck Frances Swain. It is difficult indeed to conclude that under these circumstances Frances Swain was not in some degree negligent in her lack of attentiveness alone, without even considering the negligence inherent in night time jaywalking with one's back to oncoming traffic.

As it appears from the record that Swain must in some degree, however slight, have fallen below the recognized standard of due care under the circumstances, so also it appears that Curtis could not be reasonably said to have been solely and totally at fault for the accident. There is some evidence that Curtis was traveling under the speed limit; there is other evidence that he might have exceeded the speed limit. Whether he or Mrs. Swain were hampered in their judgment or perception by alcohol is arguable either way. Evidence to show that Curtis was using drugs the day of the accident is also in conflict. When Curtis's blood-alcohol test was given, no drug test was administered. Taking all of this in the light most favorable to the Swains, the jury certainly could have found that Curtis's judgment and perception were more impaired than Swain's because of the jury's belief that Curtis had used drugs on the day of the accident. Even though the jury could have believed that Curtis had been using drugs, there is no direct evidence that his operation of the motorcycle was impaired at the time the accident occurred. Swain was jaywalking and did not have the right of way; she had her back to oncoming traffic, and probably she was not paying required attention to the dangers of oncoming traffic. Curtis, on the other hand, was proceeding along his own side of the road, with his headlight on. He may or may not have been exceeding the speed limit when he struck a pedestrian. Curtis had a right to believe that the pedestrian would not be violating his right of way by placing herself illegally in the path of his oncoming motorcycle.

A detached reader of this record might conclude that Swain, not Curtis, was the more negligent party, but it is extremely doubtful that an impartial reviewer of this case could come to the conclusion that Curtis was entirely at fault and that Swain was not in any way a negligent contributor to her own tragic death. When studying this record we cannot help but come to the conclusion that no rational fact finder could have completely absolved Swain from fault in this case. Even if we give the most extravagant advantage to Swain in every interpretation of the facts, we cannot

600

say that her jaywalking, her walking with her back to oncoming traffic on a black "tunnel-like" night, her probable inattention to traffic and her possible impairment by alcohol had absolutely nothing to do with the collision on that night. The investigating officer probably had it right: There was mutual fault, and drinking by both parties coupled with Frances's illegal jaywalking were the principal factors "contributing to the accident."

We reverse the judgment on the basis of prejudicial error in instructing the jury. We simply cannot conclude, on this record, that the jury, properly instructed, would have determined that the decedent's conduct failed in some degree to contribute to her death. The judgment of the trial court is reversed and remanded to the trial court for retrial.