GREG DEL PIERO, APPELLANT, *v.* DALE ANTHONY PHILLIPS, RESPONDENT.

No. 18648

February 22, 1989 769 P.2d 53

*Edward B. Horn* and *Paul Elcano,* for Appellant.

*Perry, Hebert & Spann* and *Kelly G. Watson,* for Respondent.

## OPINION

By the Court, SPRINGER, J.:

The jury in this case gave judgment to the defendant, respondent Phillips. We reverse because it was error for the trial court to refuse to give appellant's instructions on negligence *per se*. "A negligence *per se* instruction would have served to shift the burden of proof to respondents to show excuse or justification, thereby relieving appellant of the burden of establishing actual negligence. Barnes v. Delta Lines, Inc., 99 Nev. 688, 690-91, 669 P.2d 709, 711 (1983). As such, there is no question that the jury may have reached a different result if it had been properly instructed on the law of negligence *per se.*" 99 Nev. at 691, 669 P.2d at 711 (1983); *see* Meyer v. Swain, 104 Nev. 595, 763 P.2d 337 (1988). There is ample evidence which would have supported a jury finding that respondent Phillips was guilty of several violations of statutory rules of the road. The trial judge should, therefore, have given negligence *per se* instructions, and his refusal to give these instructions constitutes reversible error.

Appellant Del Piero was struck by a vehicle being driven by respondent Phillips as Del Piero was attempting to cross the right-turn lane which channels east-bound Mill Street traffic into Rock Boulevard. Prior to entering the unmarked crosswalk where Phillips ran into him, Del Piero had been riding his bicycle in a northerly direction on Rock Boulevard. When Del Piero approached the busy intersection of Rock Boulevard and Mill Street, he decided to proceed northerly across Mill Street as a pedestrian rather than as a bicyclist. To do this he crossed to the west side of Rock Boulevard, lifted his bicycle over the west curb of Rock Street and walked northward pushing his bicycle along an unpaved pedestrian walkway that runs alongside the curb line on the west side of Rock Boulevard. The walkway ends at the curb line of the "channelized right-turn lane,"[1] that channels right-turning traffic from the right, east-bound traffic lane of Mill Street into the right, south-bound traffic lane of Rock Boulevard.

---

[1]The term "channelized right-turn lane" is taken from the *Manual on Uniform Traffic Control Devices,* U.S. Department of Transportation, Federal Highway Admin. (1971), excerpts of which were provided in the Addendum to Respondent's Answering Brief. The manual, approved for application in this state by NRS 487.781, provides useful nomenclature in describing the Rock-Mill intersection.

Del Piero walked northerly along the unpaved sidewalk of Rock Boulevard until he reached the curb separating the sidewalk from the mentioned right-turn lane. At this point he looked to his left to see if there was any oncoming traffic about to enter the turn lane. Seeing none, he lifted his bicycle over the curb and proceeded to cross the turn lane in the direction of a triangular "pedestrian refuge island"[2] which separates the turn lane from the main thoroughfares of Mill Street and Rock Boulevard. As he made the crossing, Del Piero walked straddling his bicycle instead of walking with the bicycle at his side.

Del Piero was struck by Phillips's car when Del Piero was about one third to one-half of the way across the right-turn lane. He was walking in a path which approximated the extension of the unpaved walkway that he had been walking on before entering the paved right-turn lane.[3]

Although it was contested at trial, Del Piero was at the time of the collision a pedestrian. The trial court held as a matter of law that Del Piero was a pedestrian, and we see no reason to disagree with this holding. " 'Pedestrian' means any person afoot." Reno Municipal Code (RMC) sec. 6.04.430; NRS 484.111. Bicyclist Del Piero elected to proceed as a pedestrian, following along pedestrian paths and following procedures designed to protect pedestrians. The fact that at the time of impact he was straddling the bicycle rather than pushing it at his side does not transform Del Piero from a pedestrian into a bicyclist. If Del Piero had been struck on the sidewalk while straddling a bicycle, no one could reasonably have claimed that he was a cyclist rather than a pedestrian. The same applies to this straddle-walk across the right-turn lane. We agree with the trial court that Del Piero was a pedestrian at the time he was struck. We now consider the case in this light and examine the right-of-way enjoyed by pedestrians and motorists involved in this kind of mishap.

At the time of impact Del Piero appears to have had the right-of-way for two reasons: first, because Del Piero was a pedestrian traveling within an unmarked crosswalk at the time he was struck

[2]"The specific function of a refuge island is to provide a place of safety for pedestrians who cannot cross the entire roadway width at one time in safety because of changing traffic signals or on-coming traffic." *Manual on Uniform Traffic Control Devices,* sec. 5A-4. The island in this case was provided with a push-button control that extended the time of green-light passage for pedestrians crossing the traffic light-controlled portion of the intersection.

[3]Del Piero's testimony has him walking along the extended west curb line of Rock; Phillips's saw Del Piero as being a few feet to the east of the extended west curb line but still within the area of the turn lane that was an extension of the unpaved walkway.

and, second, because Phillips's vehicular progress through the intersection was controlled by a "Yield" sign.

That Del Piero was walking in an unmarked crosswalk at the time he was struck is subject to considerable contention on this appeal. The applicable ordinance, RMC 6.04.140(1),[4] defines a crosswalk as a "part of a roadway at an intersection." Phillips maintains that the Mill-Rock intersection is limited to that "area approximately square in shape with its boundaries at each light signal pole." If we were to accept Phillips's definition, then Del Piero would not have yet reached the intersection when he entered the right-turn lane.

RMC 6.04.280(1)[5] belies Phillips's restrictive definition of an intersection. Although the first clause of this code section describes the limited, square-shaped intersection urged by Phillips, the second clause includes within the definition of intersection "the area within which vehicles traveling upon different highways joining at any other angle [than right angles] may come in conflict." We are satisfied that the point where the Mill Street turn lane meets with Rock Boulevard is a point where vehicles traveling on different highways may come in conflict. Since this collision took place at an intersection where no crosswalk is marked, we must next examine how a pedestrian properly crosses this intersection and where the crosswalk for a pedestrian crossing such an intersection is located.

Often the kind of crossing area occupied by Del Piero is "distinctly indicated for pedestrians crossing by lines or other marking on the surface." RMC 6.04.140(2). However the crosswalk at Rock Boulevard and Mill Street has not as yet been so marked. Therefore, a person traversing that intersection to the pedestrian refuge island must do so at an unmarked crosswalk as defined in RMC 6.04.140(1).

It is obvious that the ordinance describing crosswalks was drafted with the square-shaped intersection defined in the first

---

[4]RMC 6.04.140(1) provides:

"Crosswalk" means:

(1) Part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or, in the absence of curbs, from the edges of the traversable roadway.

[5]RMC 6.04.280(1) provides:

"Intersection" means:

(1) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two (2) highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.

clause of RMC 6.04.280 in mind. We are faced here, however, with the kind of intersection at which "different highways [are] joining at [another] angle" than a right angle. This kind of angled intersection makes the application of the crosswalk ordinance, which places an unmarked crosswalk at the "[p]art of the roadway at an intersection *included within the connections of the lateral lines of the sidewalks on the opposite sides of the highway measured from the curbs,"* somewhat more difficult. (Our emphasis.) In this case the "opposite sides of the highway" are the curb bordering the unpaved sidewalk on the southerly border of the right-turn lane where it meets Rock Boulevard and the curb on the southerly end of the pedestrian refuge island. If we were to describe the "connections of the lateral lines of the sidewalks," we would extend the lateral lines of the Rock Boulevard sidewalk on which Del Piero was walking to the points where they meet the refuge island curb. Del Piero's path after stepping off the curb into the right-turn lane was in the same direction as the extended "lateral lines" of the sidewalk. Although there is not a sidewalk as such on the pedestrian refuge island, the island was designed to accommodate pedestrian traffic. It does not seem unreasonable to conclude in this case that Del Piero crossed the intersection on a "part of the highway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway," that is to say, the lateral lines of the Rock Boulevard sidewalk extending to the pedestrian refuge island. Because Del Piero was crossing an intersection in an unmarked crosswalk, he had the right-of-way with respect to Phillips.

Del Piero also had the right-of-way because there was a "yield" sign controlling Phillips's entry into the intersection of the right-turn lane and Rock Boulevard. Phillips seems to argue that the yield control has no relation to pedestrian traffic. On the contrary, as cited by Phillips himself, the "YIELD [sic] sign assigns right-of-way to traffic on certain approaches to an intersection. Vehicles controlled by a YIELD sign need stop only when necessary to avoid interference with other traffic that is given the right-of-way." *Manual on Uniform Traffic Control Devices,* sec. 2B-7. There is no reason to believe that the word "traffic" as used here should be restricted to mean only *vehicular* traffic. When vehicular traffic enters such an intersection the yield sign assigns right-of-way to pedestrian traffic as well as to vehicular traffic; accordingly, "[v]ehicles controlled by a yield sign" must stop when it is "necessary to avoid interference with [pedestrian] traffic that is given the right-of-way." Del Piero had the right-of-way by virtue of the yield sign, and Phillips failed to yield to Del Piero this right-of-way.

We have gone on at some length to show that Del Piero was clearly entitled to have the jury instructed on the law of negligence per se and that it was very prejudicial not to have the jury aware of the consequences of Phillips's apparent violation of rules of the road. The trial court committed reversible error in refusing to give these instructions.

It is hard to understand how a jury could have found under these circumstances that Phillips's negligence was not greater than the negligence of Del Piero; still, we are reluctant to grant judgment notwithstanding the verdict as requested by Del Piero. Instead, we reverse the judgment on the ground discussed, error in denying the negligence *per se* instructions, and remand for new trial.[6]

YOUNG, C. J., STEFFEN and MOWBRAY, JJ. concur.

---

[6]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.