OPINION
 

 Per Curiam:
 

 On March 10, 1993, appellant/defendant Jason Mark Roth was driving near an intersection in Henderson, Nevada when his automobile collided with the automobile travelling in front of him. Respondent/plaintiff Colin Scott was a passenger in the car that Roth hit. Scott was injured in the accident and filed a complaint for personal injuries and damages in district court.
 

 Scott alleged special damages totalling approximately $11,000; therefore the claim was subject to mandatory, non-binding arbitration pursuant to the Court Annexed Arbitration Program (“the arbitration program”) and the Nevada Arbitration Rules (“NAR”).
 
 [1]
 
 Neither party sought to exempt the case from the arbitration program.
 

 The discovery commissioner selected an arbitrator and the first pre-arbitration conference was held on March 9, 1994. At the second pre-arbitration conference, held on May 9, 1994, Scott’s
 
 *1080
 
 attorney informed the arbitrator that she could not in good faith advise her client to settle for $25,000
 
 [2]
 
 — the maximum amount the arbitrator could award under NAR 16(B). Therefore, Scott’s counsel announced that Scott would be filing for a trial de novo irrespective of the outcome of the arbitration. In response, Roth’s attorney suggested that the parties could avoid wasting everyone’s time by entering into binding arbitration with high and low caps on the potential award. Scott’s attorney appeared agreeable to the suggestion and negotiations for an agreement continued.
 

 During the negotiations, Roth’s attorney believed that he made it clear that Roth would agree to binding arbitration
 
 “only
 
 if the appropriate high/low caps could be agreed upon.” He suggested a low cap of $25,000 and a high cap of $50,000. Scott’s attorney indicated her agreement with the high cap, but suggested a low cap of $30,000. Roth’s attorney agreed with the suggestion and on May 10, 1994, wrote to Scott’s attorney confirming the selection of Susan Holland Johnson as the private arbitrator and stating that it was his “understanding” that the parties had agreed to the high/low caps. He also attached a draft arbitration agreement which was never executed.
 

 Scott’s attorney claims that she never agreed to Ms. Johnson’s selection as arbitrator and denies ever having agreed to a high/ low cap even though the parties had discussed it. After she received the May 10 letter and arbitration agreement, she called Roth’s attorney and informed him that she would not execute the agreement. At that time, she specifically said that she would not agree to any high/low caps; nevertheless, she believed the parties had agreed to final and binding arbitration.
 

 During a conversation on May 18, 1994, the parties agreed upon a new arbitrator, Michael Myers, because Scott did not want a female arbitrator. Roth’s attorney recalls that there was no discussion of the high/low caps. He drafted a confirmatory letter on May 23, 1994 and again attached a draft arbitration agreement. Although the signature of Scott’s attorney appears on a copy of this second agreement, it was never returned to Roth’s attorney and neither his signature nor that of the arbitrator appears on the document.
 

 The attorneys spoke again on July 22, 1994. Roth’s attorney claims that Scott offered to settle for $45,000 and that they reconfirmed the $50,000 high cap. Approximately one week later, Roth made a counteroffer of $43,000. This counteroffer was rejected.
 

 
 *1081
 
 The arbitration proceeded before Mr. Myers on August 4, 1994. When Mr. Myers inquired as to whether he could exceed the maximum award allowable under NAR 16(B), Roth’s attorney informed him that it was his understanding that the parties had agreed to a high/low cap and that the low cap exceeded the $25,000 set forth in NAR 16(B). Scott’s attorney did not object to or contradict this representation.
 
 [3]
 

 On August 10, 1994, the arbitrator awarded $77,100 to Scott. Thereafter, a dispute developed between the parties regarding whether they had agreed to a high cap limiting Roth’s liability on the arbitrator’s award to $50,000. On August 19, 1994, Roth filed a motion with the arbitrator to amend the arbitration award pursuant to NAR 17(C), arguing that because Scott’s attorney intentionally withheld her signature from the arbitration agreement, the case remained in the arbitration program and the arbitrator’s award could not exceed $25,000. Scott opposed the motion, arguing that the parties entered into binding, private arbitration without high/low caps. Mr. Myers denied Roth’s motion on August 31, 1994.
 

 On September 2, 1994, Roth filed a request for a trial de novo with the district court. Scott filed a motion to strike the request and reduce the arbitration award to judgment together with a motion for attorney’s fees. Roth filed an opposition to Scott’s motions, and a counter-motion to enforce the arbitration agreement with high/low caps. Roth also filed an amended request for a trial de novo, or a reduction in the arbitration award.
 

 On October 5, 1994, the district court granted Scott’s request to strike the motion for a trial de novo or a reduction of the arbitration award. However, the district court denied Scott’s motion for attorney’s fees. On November 1, 1994, an amended order was filed, providing the reasoning for the decision rendered in the October 5 order. The district court explained that while there was “conclusive evidence of a binding arbitration agreement,” there was “insufficient evidence of an agreement as to high/low caps.”
 

 Roth appeals.
 

 DISCUSSION
 

 Roth assigns error to the district court’s conclusion that the parties agreed to binding arbitration without high and low caps and the district court’s order striking his request for a trial de novo and a reduction of the arbitrator’s award. Although we agree with the district court’s determination that there is insufficient
 
 *1082
 
 evidence of the parties’ agreement to high and low caps, we conclude that the district court erred in determining that the parties had agreed to binding arbitration. We also conclude that the arbitrator’s award should have been reduced to the $25,000 limit.
 

 The district court stated that “[b]oth parties admitted in court that they had agreed to binding arbitration, and the Court finds from the dealings and course of conduct of the parties, (they proceeded through binding arbitration), that there was an agreement for binding arbitration.” It therefore appears that the district court based its decision on the parties’ discussion of binding arbitration and the fact that they had completed the arbitration process. We disagree with both conclusions.
 

 The mere fact that the parties completed the arbitration process does not lead to the conclusion that they agreed to binding arbitration. The district court’s conclusion assumes that the parties had a choice in whether to continue with the arbitration; they did not have that choice because the case was never exempted from the arbitration program. The arbitration program is mandatory and non-binding for all civil claims, such as the one at bar, wherein the probable value of a jury award would not exceed $25,000. NAR 1, 3(A).
 

 There is an established process for exempting a case from the arbitration program. The party desiring the exemption must file with the discovery commissioner a request to exempt the case from the program and serve a copy of the request on the other party. NAR 5. The discovery commissioner then decides if the case is exempted.
 
 Id.
 
 Having reviewed the record on appeal, we conclude that the parties did not comply with NAR 5.
 

 Scott apparently relies on the parties’ discussion of binding arbitration and decision to use a private arbitrator as evidence that the parties exempted the case from the arbitration program. However, neither of these circumstances cures non-compliance with NAR 5. Moreover, the NAR specifically allow parties subject to the arbitration program to agree to be bound by any arbitration award, NAR 3(C), and to choose to use a private arbitrator, NAR 6(A). Based upon these provisions, it is clear that discussions of binding arbitration and the use of a private arbitrator do not operate as an exemption, but rather are permitted options within the arbitration program.
 

 Because the case never left the arbitration program, it was error for the district court to conclude that the parties had agreed to binding arbitration based upon the fact that they completed the arbitration process. As explained above, the parties would have had to complete the arbitration regardless of whether they
 
 *1083
 
 reached an agreement to make the arbitration binding. Finally, because the case was never exempted from the arbitration program, the arbitrator’s award could not exceed $25,000.
 
 See
 
 NAR 16(B).
 

 We further conclude that the district court erred in determining that there was sufficient evidence of an agreement for binding arbitration without high and low caps. Although each party manifested the intent to enter binding arbitration, each party insisted on conditions to the agreement which were not adequately reflected in the draft agreements or the other communications between the parties. The intent of the parties was to have a binding arbitration
 
 plus
 
 something more: high/low caps or authority to make an award in excess of $25,000.
 
 [4]
 
 While the parties adamantly contend that their respective, essential conditions were clearly understood, neither side could produce a written contract, signed by both parties, that includes these essential terms. Because the parties did not have a meeting of the minds as to the essential terms of the contract, there was no agreement for binding arbitration either with or without high/low caps.
 
 See
 
 Keddie v. Beneficial Ins., Inc., 94 Nev. 418, 421, 580 P.2d 955, 956 (1978) (Batjer, J., concurring) (stating that all contracts require mutual assent, agreement, or meeting of the minds as to all essential elements).
 

 CONCLUSION
 

 For the reasons discussed above, we conclude that the parties did not have an agreement for binding arbitration. Moreover, the case was never exempted from the arbitration program and the arbitrator’s award could not exceed $25,000. We therefore reverse the district court’s order and remand the case for further proceedings.
 

 [1]
 

 NAR 3 provides, in relevant part:
 

 All civil cases commenced in the district courts that have a probable jury award value not in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs, and regardless of comparative liability, are subject to the program.
 

 [2]
 

 Apparently, Scott underwent surgery on his injured knee after filing his complaint. As a result, his special damages increased to $25,000. Roth still maintains that Scott never established that his special damages exceeded $18,000.
 

 [3]
 

 Although Scott’s primary attorney was not able to attend, an associate represented Scott.
 

 [4]
 

 Although the NAR does not prohibit the parties from agreeing to allow the arbitrator to exceed a $25,000 award, it does not expressly allow for such an agreement either. We express no opinion as to whether this is an acceptable practice.