# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAS VEGAS LAND PARTNERS, LLC;
LIVEWORK, LLC; AND ZOE
PROPERTIES, LLC,
Appellants,
vs.
RUSSELL L. NYPE; AND REVENUE
PLUS, LLC,
Respondents.

LAS VEGAS LAND PARTNERS, LLC;
LIVEWORK, LLC; AND ZOE
PROPERTIES, LLC,
Appellants,
vs.
RUSSELL L. NYPE; AND REVENUE
PLUS, LLC,
Respondents.

No. 68819

**FILED**

NOV 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

No. 70520

## *ORDER AFFIRMING IN DOCKET NO. 68819, AND REVERSING IN PART AND REMANDING IN DOCKET NO. 70520*

These are consolidated appeals from a final judgment in Docket No. 68819, and an award of attorney fees and costs in Docket No. 70520, in an action for unjust enrichment/quantum meruit. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

Appellants Las Vegas Land Partners, LLC, LiveWork, LLC, and Zoe Properties (collectively, LVLP) owned five blocks of land in downtown Las Vegas. In 2005, LVLP enlisted respondents Russell L. Nype and his company Revenue Plus, LLC (collectively, Nype) to help find investors and bring in equity and debt capital for a development project. Nype enlisted First Wall Street Capital International (FWS) to assist with

the search and LVLP and FWS entered into a written agreement under which FWS agreed to advise LVLP and to introduce them to potential investors, including his former employer Forest City. Nype was not named in the FWS agreement, although he understood he was a party to the agreement and his job was to introduce potential investors to LVLP. The compensation agreement between LVLP and FWS indicated that LVLP would pay FWS a transaction fee equal to four percent of all equity capital and one percent of all debt.

FWS did not perform, and LVLP decided to terminate its relationship with FWS and continue to work solely through Nype to secure a contract with Forest City. Forest City and LVLP negotiated a partnership, but Forest City initially backed out and Nype worked with Forest City to get them to reconsider. Nype then attempted to enter into a separate written contract with LVLP, using the terms from LVLP's prior agreement with FWS. The parties never reached an agreement, but several communications between LVLP and Nype indicate that LVLP intended to pay Nype for the Forest City introduction. Forest City gave the project a second look, and, in June of 2006, LVLP and Forest City entered into a letter of intent (LOI) to form a limited liability company (LLC).

The LOI contemplates the formation of the LLC and does not mention the sale of real estate. However, on June 22, 2007, LVLP and Forest City reached a deal, wherein Forest City purchased an undivided 60 percent tenancy-in-common interest in LVLP's downtown Las Vegas property. LVLP executives acknowledged that the goal of the partnership was a capital investment, and that the potential sale of real property was first introduced by Forest City after Nype was no longer involved with the transaction.

 

In November 2007, LVLP filed a complaint against Nype seeking declaratory judgment that Nype lacked the necessary license to act as a real estate broker, and thus, it did not owe Nype any compensation or fee. Nype countersued seeking compensation for his services. The district court granted LVLP's motion for summary judgment, determining that because the final agreement between LVLP and Forest City was a land sale contract, Nype was required to have a license. Nype appealed that decision and we reversed the district court's grant of summary judgment, holding that "genuine issues of material fact remain concerning whether Nype is entitled to compensation" as "the evidence shows only that the final transaction was a land sale contract, but not that the initial work and agreements contemplated that result or that Nype engaged in specific actions reserved by NRS 645.030 to licensed real estate brokers." *Nype v. Las Vegas Land Partners, LLC*, No. 59940, 2013 WL 5477158, at *3 (Nev., Sept. 26, 2013) (Order of Reversal and Remand).

On remand, the district court held a bench trial focusing on Nype's actions and whether Nype acted as a real estate broker. Following the conclusion of trial, the district court granted Nype's action for unjust enrichment/quantum meruit and awarded him $2,608,979.50 for his services. LVLP then filed a motion to alter or amend the decision, which the district court denied. LVLP appeals that decision in Docket No. 68819. After that appeal was docketed in this court, the district court entered an order granting in part and denying in part LVLP's motion to retax and settle costs. The district court awarded Nype $191,938.19 in costs, plus interest. LVLP appeals that decision in Docket No. 70520. These appeals have been consolidated.

*Standard of review*

We review a district court's factual findings for an abuse of discretion and will not set aside those findings unless they are clearly erroneous and not supported by substantial evidence. *Sowers v. Forest Hills Subdivision*, 129 Nev. 99, 105, 294 P.3d 427, 432 (2013). Similarly, "fact-based conclusions of law are entitled to deference, and they will not be disturbed if supported by substantial evidence." *Manwill v. Clark Cty.*, 123 Nev. 238, 241, 162 P.3d 876, 879 (2007). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Mason-McDuffie Real Estate, Inc. v. Villa Fiore Dev., LLC*, 130 Nev., Adv. Op. 83, 335 P.3d 211, 214 (2014) (internal quotation marks omitted).

*Substantial evidence supports the district court's finding that Nype did not act as a real estate broker*

LVLP argues that the district court erred in its determination that Nype did not act as a real estate broker. LVLP points to several places in the trial exhibits, primarily e-mails, to support its argument that Nype acted as a real estate broker and that he knew a real estate license was required in order to do certain activities relating to LVLP's development project. Nype argues that the district court correctly determined that he did not act as a real estate broker and should not be precluded from collecting a reasonable compensation for services rendered. We agree.

NRS 645.230 requires a real estate broker or salesperson to be licensed to conduct real estate transactions in Nevada. NRS 645.270 bars unlicensed persons from collecting compensation for work done in the capacity of a real estate broker:

> A person . . . engaged in the business or acting in
> the capacity of a real estate broker or a real estate
> salesperson within this State may not commence or

maintain any action in the courts of this State for the collection of compensation *for the performance of any of the acts mentioned in NRS 645.030* without alleging and proving that the person . . . was a licensed real estate broker or real estate salesperson at the time the alleged cause of action arose.

(Emphasis added.) NRS 645.030 defines "[r]eal estate broker," in pertinent part, as:

a person who, for another and for compensation or with the intention or expectation of receiving compensation:

(a) Sells, exchanges, options, purchases, rents or leases, or negotiates or offers, attempts or agrees to negotiate the sale, exchange, option, purchase, rental or lease of, or lists or solicits prospective purchasers, lessees or renters of, any real estate . . . .

We previously held that a court must analyze the individual circumstances of the services performed in order to determine whether the services are of the type contemplated by NRS 645.030, and, if so, the person performing such services is acting without a license cannot recover a commission. *Islandia, Inc. v. Marechek*, 82 Nev. 424, 427-28, 420 P.2d 5, 7 (1966). The district court found that NRS 645.270 does not bar Nype from collecting compensation in this matter, because Nype never performed or contracted to perform any leasing services and is not suing to collect compensation for the purported real estate broker's act of offering to perform leasing services. Substantial evidence in the record supports the district court's findings. For instance, LVLP co-owner David Mitchell repeatedly testified that Nype's role was that of a finder and that Nype was not a leasing broker. Nype testified that he was responsible for creating

opportunities to introduce potential business partners, and he had no role in determining what the final agreement would be. Further, neither the FWS agreement nor the LOI refer to the sale of land or property. Although LVLP points to several instances in the trial record where Nype stated that he thought he might need a real estate license or may have been acting as a real estate broker, as the district court determined, his beliefs were "legal conclusions that Mr. Nype was not equipped to make."

Viewing the evidence in a light most favorable to Nype, we conclude that substantial evidence supports the district court's finding that Nype acted to create opportunities and introductions of various potential business partners, rather than to sell a property or business. *See Yamaha Motor Co., U.S.A., v. Arnoult,* 114 Nev. 233, 238, 955 P.2d 661, 664 (1998) ("This court is not at liberty to weigh the evidence anew, and where conflicting evidence exists, all favorable inferences must be drawn towards the prevailing party.").[1] Accordingly, we hold that the district court did not abuse its discretion in concluding that Nype did not act as a real estate broker as defined by NRS 645.270.

*Substantial evidence supports the district court's finding that Nype did not sell a security*

LVLP next argues that the district court erred by allowing Nype to recover damages for selling securities while unlicensed. Specifically, LVLP argues that Nype violated NRS Chapter 90 by offering to sell an

---

[1]LVLP's request for this court to consider caselaw from sister jurisdictions appears to be an invitation to reweigh evidence and engage in appellate fact-finding, which we decline to do. *See Law Offices of Barry Levinson, P.C. v. Milko,* 124 Nev. 355, 365, 184 P.3d 378, 385 (2008) ("[I]t is not the role of this court to reweigh the evidence.").

interest in an LLC, and LVLP points to multiple exhibits in the record that show that Nype considered himself a broker when selling LVLP's equity interest. Further, LVLP argues that the district court erred when it concluded that Nevada law only prohibits selling a fully formed LLC interest, and that the district court improperly analyzed the issue using federal securities law in addition to Nevada law.[2] LVLP argues that Nype offered to sell an interest in an LLC by holding the initial meetings, including property tours in Las Vegas, which led to the LOI negotiations. Nype contends that the district court correctly concluded that the apportionment of interests in a newly created LLC does not constitute an offer to sell a security within the meaning of NRS 90.280. Nype further argues that he did not offer to sell a security, since NRS 90.280(1) assumes that a security already exists and that its ownership is being transferred through a sale, disposition, or purchase. We agree.

NRS 90.310(1) makes it unlawful for "any person to transact business in this State as a broker dealer . . . unless licensed or exempt from licensing under [NRS Chapter 90]." NRS 90.220 defines a "[b]roker-dealer" as "any person engaged in the business of effecting transactions in securities for the account of others or for the person's own account." Securities are statutorily defined, and include, among other things, "an interest in a limited-liability company." NRS 90.295. In the context of

---

[2]Although it does appear that the district court improperly analyzed Nype's action based on criteria under federal law, the district court did a complete analysis based solely on Nevada law and ultimately reached the correct result. "This court will affirm a district court's order if the district court reached the correct results, even if for the wrong reason." *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010).

securities, NRS 90.280 defines "[s]ale" and "[s]ell," in pertinent part, as follows:

> "Sale" includes every contract of sale, contract to sell, or other disposition, of a security or interest in a security for value. "Sell" has a corresponding meaning. In this context:
>
> 1. "Offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value.
>
> . . . .
>
> 6. The terms defined in this section do not include:
> (a) The creation of a security interest or a loan.

In looking at the plain language of NRS 90.280, and in particular NRS 90.280(6)(a), the definitions of "sell" and "offer to sell" do not include the creation of an LLC. Because the parties' LOI created a new LLC, with the parties apportioning newly-created member units in relation to their future capital contributions, Nype did not sell or offer to sell a security interest in an LLC. Accordingly, we hold that substantial evidence supports the district court's finding that "interests in an LLC were not being sold, disposed of[,] or purchased," and the district court did not abuse its discretion in concluding that "Nype did not engage in the performance of a contract in violation of NRS 90.310."

*The district court did not abuse its discretion in awarding Nype damages in quantum meruit*

The district court awarded Nype damages in quantum meruit, determining that Nype was a significant, contributing factor in Forest City's investment in LVLP's development project, and that LVLP profited from approximately six months of Nype's unpaid services. LVLP argues that

substantial evidence does not support the district court's judgment, arguing that the district court did not consider all of the possible methods of calculating damages to determine what the lesser value would be. LVLP points to sections in the record where it had proposed lower fee structures and fixed payments rather than the four percent/one percent formula, arguing that these alternate fee structures would have generated considerably less in the amount of damages awarded. However, LVLP concedes that Nype's fee was never agreed upon, and that communications between Nype and Mitchell demonstrate that Nype expected that he would be paid consistent with the FWS agreement. Nype contends that the district court based its damage award on the fact that "LVLP had expressed a willingness to pay a fee equal to 4% of all equity capital and 1% of all debt capital committed for the [p]roject," and that formula resulted in less damages than the fair market value of Nype's services and was thus appropriate. We agree.

A quantum meruit claim may be brought where a benefit is conferred with a reasonable expectation of payment. *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012). A party seeking to recover in quantum meruit must demonstrate that his services "confer[red] a benefit on the [other party]." *Id.* "[T]he proper measure of damages under a quantum meruit theory of recovery is the reasonable value of [the] services." *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 110 Nev. 984, 987, 879 P.2d 69, 71 (1994) (second alteration in original) (internal quotation marks omitted). Industry custom and any agreement between the parties may be relevant, *id.* at 988-89, 879 P.2d at 71-72, but recovery in quantum meruit "is usually the lesser of (i) market value and (ii) a price the defendant has expressed a willingness to pay." *Certified Fire,*

128 Nev. at 381 n.3, 283 P.3d at 257 n.3 (internal quotation marks omitted). The district court has "wide discretion in calculating an award of damages and an award will not be disturbed on appeal absent an abuse of discretion." *Flamingo Realty*, 110 Nev. at 987, 879 P.2d at 71.

Substantial evidence in the record supports the district court's conclusions, including, among other evidence, e-mails between LVLP and Nype discussing the four percent/one percent formula, an executive summary of the project between LVLP and Forest City, the signing agent/financing letter between LVLP and FWS that includes the four percent/one percent formula, e-mails between LVLP and Nype discussing potential compensation agreements, and LVLP's loan financing agreements for the project. Moreover, Nype's expert witness testified regarding industry standards and valued Nype's services at $5,217,595. The district court found that this amount should be reduced by 50 percent for work done by Nype while he was associated with FWS.

Although LVLP points to various portions of the record to support its argument, including testimony from its own expert witness, the district court evaluated the credibility of both parties' expert witnesses and weighed the evidence in reaching its decision. "This court accords 'deference to the point of view of the trial judge since he had the opportunity to weigh evidence and evaluate the credibility of witnesses—an opportunity foreclosed to this court.'" *Jackson v. Groenendyke*, 132 Nev., Adv. Op. 25, 369 P.3d 362, 365 (2016) (quoting *Harris v. Zee*, 87 Nev. 309, 311, 486 P.2d 490, 491-92 (1971)). Accordingly, we conclude that the district court did not abuse its discretion in awarding Nype damages in quantum meruit.

*The district court did not abuse its discretion in allowing Revenue Plus to recover damages*

LVLP argues that the district court erroneously awarded Revenue Plus damages, despite it not being a registered business in Nevada. NRS 86.548(2) provides that "[e]very foreign limited-liability company transacting business in this State which fails or neglects to register with the Secretary of State . . . may not commence or maintain any action, suit or proceeding in any court of this State until it has registered with the Secretary of State." Although LVLP brought the initial lawsuit against Revenue Plus, LVLP contends that Revenue Plus should not have been able to countersue and should be barred from recovering damages. LVLP further argues that the district court improperly relied on *Walker Bank & Trust Co. v. Smith*, 88 Nev. 502, 501 P.2d 639 (1972), in support of its holding that Revenue Plus could assert defenses and counterclaims. Nype argues that the district court's reliance on *Walker* is proper as it is analogous to the case at hand. We agree.

In *Walker*, we analyzed whether a company that "did not qualify to do business as a foreign corporation" in Nevada was prohibited from defending an action and asserting claims when the applicable statute indicated "that such a corporation shall not be allowed to commence, maintain, or defend any action." 88 Nev. at 507, 501 P.2d at 642 (internal quotation marks omitted). We determined that even when a company "[does] not qualify to do business as a foreign corporation in this State[,] . . . it is established law that a plaintiff waives its right to question capacity to defend when it brings suit against such a corporation and compels it to appear and answer." *Id.* The *Walker* court also examined the analogous question of whether an unlicensed contractor could assert claims and defenses when "[NRS] 624.320 provides that one engaged in the

business of acting in the capacity of a contractor must allege and prove that he was duly licensed if he maintains an action in the courts of this State." *Id.* We held that the statute "may not be construed to mean that an unlicensed contractor may not defend an action brought against him." *Id.*

Since LVLP included Revenue Plus in its lawsuit, it cannot now be permitted to question Revenue Plus's ability to defend. *Walker*, 88 Nev. at 507, 501 P.2d at 642; *see also Scott v. Day-Bristol Consol. Mining Co.*, 37 Nev. 299, 304, 142 P. 625, 626 (1914) ("To permit a plaintiff . . . to sue a corporation, bring it into court under process commanding it to answer, then to permit such plaintiff to strike the answer and take judgment by default, cannot be tolerated . . . . To seek equitable relief in a court and then question the right of the other party to be heard, does not comport with the principles of equity."). We thus hold that the district court did not abuse its discretion when it awarded Revenue Plus damages, despite the fact that Revenue Plus was not registered with the Secretary of State. *See Dynamic Transit Co. v. Trans Pac. Ventures, Inc.*, 128 Nev. 755, 762-63, 291 P.3d 114, 118 (2012) ("Broad discretion is given to a district court in calculating an award of damages, and such award will not be reversed unless there is an abuse of discretion.").

*The district court's award of costs for a nontestifying expert was an abuse of discretion*

NRS 18.005 defines recoverable costs, and subsection 5 allows for the recovery of "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." LVLP argues that the district court abused its discretion in awarding more than $1,500 in costs to Nype for nontestifying experts Mark Rich and John

Knott.[3] LVLP contends that the district court's award of expert witness expenses was unwarranted because Rich was stricken by the district court and never testified, and Nype never called Knott to testify. Nype argues that the district court properly considered factors from *Frazier v. Drake*, 131 Nev., Adv. Op. 64, 357 P.3d 365 (Ct. App. 2015), and determined that circumstances necessitating a larger fee were established for both Mark Rich and John Knott. We disagree.

To be recoverable, costs "must be actual and reasonable." *Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998). "A district court's decision regarding an award of costs will not be overturned absent a finding that the district court

---

[3]LVLP also argues that the district court abused its discretion by awarding Nype mediation costs and travel, lodging, and meals costs. We conclude that this argument is without merit. NRS 18.005(17) is a catchall provision that allows for the recovery of costs for "[a]ny other reasonable and necessary expense incurred in connection with the action." The district court concluded that the mediation costs incurred by Nype were associated with a court-ordered mediation and were reasonable and necessarily incurred. Similarly, the district carefully considered the amount initially requested by Nype and rejected almost $5,000 before concluding that the remainder of Nype's travel, lodging, and meal costs were reasonable and necessarily incurred. Given the district court's wide latitude in calculating costs, we conclude that the district court's decision to award these costs was not an abuse of discretion. *See Dynamic Transit Co. v. Trans Pac. Ventures, Inc.*, 128 Nev. 755, 762-63, 291 P.3d 114, 118 (2012). We note that other jurisdictions also allow for recovery of travel, lodging, and meals costs. *See, e.g., Lewis, Wilson, Lewis & Jones, Ltd. v. First Nat. Bank of Tuscumbia*, 435 So. 2d 20, 23 (Ala. 1983) (concluding that various costs, including travel expenses, are "considered appropriate for reimbursement"); *Madison Capital Co., LLC v. Star Acquisition VIII*, 214 P.3d 557, 561-62 (Colo. App. 2009) (upholding trial court's award of costs for prevailing party's travel and meal expenses); *Nygaard v. Lucchesi*, 654 A.2d 410, 414 (Del. Super. Ct. 1994) ("Travel expenses, including meals and lodging are generally recoverable by the prevailing party.").

abused its discretion." *Vill. Builders 96, L.P. v. U.S. Labs., Inc.*, 121 Nev. 261, 276, 112 P.3d 1082, 1092 (2005). A district court's decision that is based on an incorrect interpretation of law is an abuse of discretion. *Bergmann v. Boyce*, 109 Nev.670, 674, 856 P.2d 560, 563 (1993) *superseded by statute on other grounds as recognized in Matter of DISH Network Derivative Litigation*, 133 Nev., Adv. Op. 61 n.6, 401 P.3d 1081, 1093 n.6 (2017).

Recently, in *Public Employees' Retirement System of Nevada v. Gitter*, 133 Nev., Adv. Op. 18, 393 P.3d 673, 681 (2017), we clarified the law with respect to expert witness fees under NRS 18.005(5). We held that "[u]nder NRS 18.005(5), an expert witness who does not testify may recover costs equal to or under $1,500, and consistent with *Khoury*, '[w]hen a district court awards expert fees in excess of $1,500 per expert, it must state the basis for its decision.'" *Id.* (quoting *Khoury v. Seastrand*, 132 Nev., Adv. Op. 52, 377 P.3d 81, 95 (2016)). "With respect to cases in which the expert acts only as a consultant and does not testify, however, district courts may award $1,500 or less, so long as the district court finds such costs constitute '[r]easonable fees.'" *Id.* (quoting NRS 18.005(5)).

Here, neither Rich nor Knott testified. Thus, under *Gitter*, the district court abused its discretion by awarding more than $1,500 per nontestifying expert, regardless of whether it stated an adequate basis for the decision. *See id.* Accordingly, we reverse that portion of the district court's judgment and remand this matter to the district court for it to amend its judgment and award Nype $3,000 for his nontestifying expert witness fees.

For the reasons set forth above, we ORDER the judgment of the district court AFFIRMED in Docket No. 68819, and AFFIMED in part and

SUPREME COURT
OF
NEVADA

(O) 1947A

14

REVERSED in part in Docket No. 70520, and we remand this matter to the district court to enter an amended judgment consistent with this order.

                                                _____, C.J.
                                                Cherry

                                                _____, J.
                                                Douglas

                                                _____, J.
                                                Gibbons

                                                _____, J.
                                                Pickering

                                                _____, J.
                                                Hardesty

                                                _____, J.
                                                Parraguirre

                                                _____, J.
                                                Stiglich

cc:   Hon. Ronald J. Israel, District Judge
       Michael H. Singer, Settlement Judge
       Marquis Aurbach Coffing
       Reisman Sorokac
       Eighth District Court Clerk