CHRIS BEATTIE, a Single Man, Appellant, v. WILLIAM H. THOMAS, M.D., JAMES D. PITTS, M.D., Licensed Health Care Providers; MEDASONICS, INC., Respondents.

No. 14006

August 31, 1983                    668 P.2d 268

[Rehearing denied October 18, 1983]

*Durney, Guinan & Brennan,* Reno, for Appellant.

*Gary G. Bullis, Ltd.,* Reno, for Respondents Thomas and Pitts.

*Leggett & Hamilton,* Reno, for Respondent MedaSonics, Inc.

## OPINION

By the Court, MOWBRAY, J.:

In this medical malpractice and products liability suit, Beattie appeals from an order of the district court denying him a new trial and awarding respondents Thomas and Pitts $29,700 in attorney's fees. While we disagree with appellant's assertions regarding error during trial, we hold that, by awarding Drs. Thomas and Pitts all of their requested attorney's fees pursuant to NRCP 68 without analyzing on the record the factors relevant to such a decision, the district court abused its discretion. The court also erred in requiring appellant to pay the cost of including certain portions of the trial transcript in the record on appeal. We therefore affirm in part and reverse and remand in part for a redetermination on the record of the amount of attorney's fees to be awarded, the redetermination to accord with the factors set forth in this opinion.

### THE FACTS

On May 18, 1978, appellant Beattie was seriously injured in a motorcycle accident. He was admitted to Carson-Tahoe Hospital with a dislocated right knee, considerable tissue damage in and around the knee, and a transected popliteal artery. The popliteal artery is the principal artery to the lower leg. Within a reasonably short time after Beattie was admitted, respondents Dr. Thomas and Dr. Pitts successfully completed an anastomosis of the popliteal artery, sewing the ends of the artery back together and restoring blood flow to the lower leg. Dr. Thomas also made an incision, known as a fasciotomy, in one of the muscle compartments of the leg, to relieve pressure on the leg's arteries caused by internal swelling. An orthopedic surgeon then repaired the major structural damage to the knee.

An instrument known as a hand-held Doppler, manufactured by respondent MedaSonics, was used both during the operation and frequently during the post-operative period to check for pulses indicating restored blood flow. The Doppler is a noninvasive electronic diagnostic instrument used, among other things, to detect the presence and velocity of blood flow when for one reason or another a pulse cannot be detected manually. The instrument is very sensitive, and can pick up pulses when the blood pressure is very low. Without the use of a blood pressure cuff to take pressure readings, the Doppler cannot indicate the volume of circulation, but only the presence of some circulation. The doctors at Carson-Tahoe Hospital did not use the Doppler in conjunction with a pressure cuff in Beattie's case.

For the first few days following the surgery, Beattie appeared to be recuperating favorable. Then, on or around May 22, the condition of his leg began to deteriorate. Dr. Thomas suspected that blood clots in the veins of the leg were interfering with circulation, and began heparin therapy to reduce clotting. Beattie's condition seemed to improve temporarily, but again worsened following Dr. Thomas' departure on the 26th. Dr. Pitts eventually performed a second fasciotomy on the 28th in an attempt to restore circulation to Beattie's deteriorating leg.

On May 29th, Beattie was transferred at his parent's request to Stanford University Hospital. After further fasciotomies and debridement of dead tissue, Beattie's leg was amputated below the knee on June 7th.

Beattie filed suit against respondents on April 25, 1980, alleging that Drs. Thomas and Pitts were negligent in their care and treatment of him. He also alleged that the Doppler blood flow monitor manufactured by MedaSonics, Inc. was defective in that MedaSonics failed to provide adequate instructions or warnings concerning the use and limitations of the Doppler. Ultimately, the jury found against Beattie and for all respondents. The district court denied Beattie's motion for a new trial, and awarded $29,700 in attorney's fees to respondents Thomas and Pitts under NRCP 68. At the request of Drs. Thomas and Pitts, the district court also required Beattie to pay for inclusion of the opening statements and final arguments of counsel in the record on appeal. This appeal followed.

### APPELLANT'S PROPOSED INFORMED CONSENT INSTRUCTION

Appellant contends that the district court erred in refusing to give a proposed jury instruction on informed consent. He argues that the instruction was justified by evidence that Drs. Thomas and Pitts did not discuss with him or his parents the possibility of early amputation to save more of his leg.

A party is entitled to have the jury instructed on all of his theories of the case that are supported by the evidence. *See* American Cas. Co. v. Propane Sales & Serv., 89 Nev. 398, 400, 513 P.2d 1226, 1227 (1973); Rocky Mtn. Produce v. Johnson, 78 Nev. 44, 52, 369 P.2d 198, 202 (1962). In addition to being supported by evidence, the requested instruction must be consistent with existing law. Federal Ins. Co. v. Public Service Co., 570 P.2d 239, 242 (Colo. 1977). If the other instructions given to the jury adequately cover the subject of the requested instruction, or if there is no proof in the record to support the

instruction, the trial court should not give it. Village Development Co. v. Filice, 90 Nev. 305, 312, 526 P.2d 83, 87-88 (1974). *See* Watters v. Querry, 626 P.2d 455, 458 (Utah 1981).

Appellant's proposed instruction varies from the traditional and perhaps still majority view of informed consent. Under the traditional view, the physician's duty to disclose is measured by a professional medical standard, which the plaintiff must establish with expert testimony. The standard is either the customary disclosure practice of physicians in the relevant "community," or what a reasonable physician would disclose under the circumstances. Annot., 88 A.L.R.3d 1008, 1011-12 (1978). *See* Natanson v. Kline, 350 P.2d 1093, 1107 (Kan. 1963). Insofar as we have considered standards of care for the medical profession, our holdings have been consistent with the traditional view. *See, e.g.,* Orcutt v. Miller, 95 Nev. 408, 411, 595 P.2d 1191, 1193-94 (1979). In addition, the Nevada Legislature has seen fit to enact a general rule requiring plaintiffs to demonstrate the alleged negligence of a physician with expert testimony. *See* NRS 41A.100(1).[1] Appellant does not explain why this statutory rule does not apply. Moreover, he fails to direct us to sufficient expert testimony in the record to support an informed consent instruction under the rule. For these reasons, the district court did not err in refusing appellant's informed consent instruction.

### THE PROPOSED "INCREASED RISK OF HARM" INSTRUCTION

Beattie attempted to show at trial that MedaSonics, Inc. had not adequately communicated to the users of the Doppler the inability of the machine, when used without a pressure cuff, to determine whether blood flow is adequate to sustain tissue life. The requested instruction on the concept of increased risk of harm was an attempt by Beattie to lighten his burden of showing that MedaSonic's breach, if any, of its duty to warn was a proximate cause of the eventual high amputation of Beattie's leg.

The requested instruction closely follows the language of

---

[1] NRS 41A.100(1) provides in relevant part as follows:

Liability for personal injury or death shall not be imposed upon any provider of medical care based on alleged negligence in the performance of such care unless evidence consisting of expert medical testimony . . . is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case and to prove causation of the alleged personal injury or death. . . .

Section 323 of the Restatement (Second) of Torts.[2] This section by its terms relates only to the rendering of services, and the comment on the section makes the focus on services clear. Appellant cites no authority indicating that Section 323 applies to products as well. MedaSonics did not render any services in Beattie's case.

In addition, most of the cases cited by appellant are concerned with the trial court's improper taking of the question of proximate cause from the jury. The district court left the question of proximate cause to the jury in the instant case, and gave several instructions that, taken together, correctly outlined the applicable law. Where the instructions given adequately cover the applicable law, it is not error to refuse further instructions on the same subject. Crown Controls Corp. v. Corella, 98 Nev. 35, 639 P.2d 555 (1982). See Village Development Co. v. Filice, 90 Nev. at 314, 526 P.2d at 88. Therefore, the district court did not err in refusing appellant's proposed instruction on increased risk of harm.

## THE EVIDENCE THAT MEDASONICS HAD NOT BEEN PREVIOUSLY SUED

At one point during the three-week trial, over appellant's objection, the court admitted into evidence testimony on behalf of MedaSonics that it had never before been sued regarding the Doppler. This was error. In strict tort liability cases, evidence of prior or subsequent mishaps similar to the one in issue, involving the same product, are admissible to show faulty design or manufacture or other elements of the strict liability cause of action. Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415-16, 470 P.2d 135, 139-40 (1970). See Reiger v. Toboy Enterprises, 609 P.2d 402 (Or. 1980); Stolz v. McKowen, 545 P.2d 584 (Wash. 1976). However, there is a distinct difference between showing the accident/injury history of a product and the legal history of a product. Many factors

---

[2]Section 323 reads as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

influence the filing of a lawsuit, among them the amenability of defendant's insurer to prompt out-of-court settlements. Even if the absence of prior lawsuits concerning a particular product remotely tends to indicate that no substantial defect exists, the prejudicial value and confusing nature of such evidence would seem to outweigh considerably its probative value. Respondent cites no cases holding that the prior legal history of a product is admissible.

However, in its order denying appellant's motion for a new trial, the district court specifically held that even if the evidence of the absence of prior suits against MedaSonics was irrelevant and inadmissible, the admission of the evidence did not affect the substantial rights of the parties. Given the massive amount of evidence introduced both for and against MedaSonics, the court did not palpably abuse its discretion in so holding. As we have stated in the past,

> Even if error had been present . . . , the appellant has not revealed any particular prejudice other than an adverse verdict. It has failed to show that the errors complained of would have so substantially affected its rights that it could be reasonably assumed that if it were not for the alleged errors, a different result might reasonably have been expected.

El Cortez Hotel, Inc. v. Coburn, 87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971). *See* Truckee-Carson Irr. Dist. v. Wyatt, 84 Nev. 662, 666-67, 448 P.2d 46, 49-50 (1968), *cert. denied,* 395 U.S. 910 (1969).

### THE TESTIMONY OF APPELLANT'S FATHER REGARDING THE TREATMENT OF HIS SON

Near the end of the trial, over objection, the district court allowed the following question to and answer from appellant's father:

Q: You're not critical of Dr. Pitts or Dr. Thomas' treatment of your boy, are you?
A: No, sir.

Appellant characterizes his father's testimony as a lay opinion on the issue of the negligence of Drs. Thomas and Pitts, noting that a lay witness may not express an opinion "as to matters which are beyond the realm of common experience and which require the skill and knowledge of an expert witness." Randolph v. Collectramatic, Inc., 590 F.2d 844, 846 (10th Cir. 1979). Under NRS 50.265, a lay opinion is admissible only when the opinion is both "rationally based on the perception

of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue."

As respondents point out, Mr. Beattie's testimony could just as easily be characterized as an expression of his personal feelings about his son's treatment. Moreover, the district court cured any possible prejudice by instructing the jury to consider only expert testimony when determining the standard of professional learning, skill, and care required of the doctors. Given this curative instruction, and in the context of a three-week trial amassing twenty volumes of record, the district court did not abuse its discretion by refusing to grant a new trial on the basis of two words of testimony.

## ATTORNEY'S FEES UNDER NRCP 68

Prior to trial in the instant case, Drs. Thomas and Pitts each tendered a $15,000 offer of judgment to Beattie under NRCP 68.[3] Beattie elected to proceed to trial against both Thomas and Pitts, although he accepted a $15,000 settlement offer from the orthopedic surgeon. The jury returned a verdict in favor of Drs. Thomas and Pitts. On proper motion, the district court held that their settlement offers had been reasonable and in good faith, and awarded them their costs in the amount of $7,415 and attorney's fees in the amount of $29,700.

Appellant first contends that insofar as NRCP 68 permits an award of attorney's fees, it is an invalid court rule, because it is inconsistent with NRS 17.115 and NRS 18.010. The latter statute authorizes the court to award attorney's fees to a prevailing defendant, but only when the plaintiff has not sought more than $10,000. *See* Ecklund v. Nevada Wholesale Lumber Co., 95 Nev. 430, 596 P.2d 218 (1979). NRS 17.115 expressly governs judgment offers, but varies from NRCP 68 in that it allows recovery of only costs and expert witness fees, and not attorney's fees, by an offeror whose opponent fails to obtain a judgment more favorable than the offer. NRS 17.115(4).

---

[3]NRCP 68 provides in relevant part as follows:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree shall not recover costs, nor attorneys' fees, but shall pay the costs and attorneys' fees, if any be allowed, of the party making the offer from the time of the offer.

Appellant does not cite any authority holding that these statutes are exclusive, and our comments in Armstrong v. Riggi, 92 Nev. 280, 549 P.2d 753 (1976), indicate just the opposite.[4]

Appellant argues secondly that NRCP 68 does not apply where the jury gave its verdict for the defendant. He relies on Delta Air Lines, Inc. v. August, 450 U.S. 346 (1981), in which the High Court, in a 5-4 decision, held that the phrase "judgment finally obtained by the offeree" as used in Federal Rule of Civil Procedure 68 does not encompass a judgment against the offeree as well as a judgment in favor of the offeree. We decline to follow the *Delta Air Lines* reasoning, not only because of the differences between NRCP 68 and FRCP 68,[5] but because such reasoning leads to an anomalous result. Under the rule proposed by appellant and followed by the majority in *Delta Air Lines,* and offeree would be penalized for recovering a judgment less favorable than the offer, but would suffer no penalty if he did not recover any judgment whatsoever. As the Alaska Supreme Court held in Wright v. Vickaryous, 611 P.2d 20, 23 (Alaska 1980), "[w]e see nothing to recommend such a result, and thus reject the interpretation offered by [appellant]."

On the other hand, while the purpose of NRCP 68 is to encourage settlement, it is not to force plaintiffs unfairly to forego legitimate claims. In exercising its discretion regarding the allowance of fees and costs under NRCP 68, *see* Armstrong v. Riggi, *supra,* the trial court must carefully evaluate the following factors: (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4)

---

[4]As we said in that case, "[i]nsofar as counsel fees for the defendants who lost the case are concerned, [NRS 18.010] obviously has no application since they did not prevail. The court need only have concerned itself with Rule 68 in deciding whether to exercise its discretion in favor of the motion for fees." 92 Nev. at 282, 549 P.2d at 754.

[5]NRCP 68 expressly includes attorney's fees, while FRCP 68 applies only to costs. Thus, NRCP 68 provides an additional incentive to settle. Moreover, Nevada has not adopted FRCP 54(d), on which the High Court partially relied. Rather, Nevada enacted NRS 18.020, under which allowance of costs to the prevailing party in certain specified cases is mandatory rather than discretionary. *See* Lyon v. Walker Boudwin Constr. Co., 88 Nev. 646, 650, 503 P.2d 1219, 1221 (1972); Randono v. Turk, 86 Nev. 123, 133, 466 P.2d 218, 224 (1970).

whether the fees sought by the offeror are reasonable and justified in amount. After weighing the foregoing factors, the district judge may, where warranted, award up to the full amount of fees requested. On the other hand, where the court has failed to consider these factors, and has made no findings based on evidence that the attorney's fees sought are reasonable and justified, it is an abuse of discretion for the court to award the full amount of fees requested.

In the instant case, the district court found only that the settlement offers of Drs. Thomas and Pitts had been reasonable and in good faith. The district court took no evidence and made no findings on the other factors mentioned above. We therefore reverse the district court's award of $29,700 in attorney's fees to respondents Thomas and Pitts, and remand for a redetermination on the record of the amount of attorney's fees to be awarded in light of the factors enumerated in this opinion.

## THE COST OF SUPPLEMENTING THE RECORD ON APPEAL

Respondents Thomas and Pitts obtained a court order requiring appellant to include in the record on appeal the opening and closing statements of counsel. No issue on appeal concerned the propriety of such statements, and of course they cannot constitute evidence. NRAP 10 does not invest the party who prevailed in the lower court with the unqualified right to require the appellant to file a full trial transcript. Appellant and his counsel are under a duty to omit from the record on appeal all material that is not essential to decision of the questions on appeal. *See* Driscoll v. Erreguible, 87 Nev. 97, 102, 482 P.2d 291, 294 (1971). In the case of Armstrong v. Onufrock, 75 Nev. 342, 341 P.2d 105 (1959), the respondents had required the appellant to include in the record on appeal trial testimony that was not relevant to any of the issues raised on appeal, and we held that the appellant was entitled to be reimbursed for the costs of including that irrelevant testimony. *Id.* at 348, 341 P.2d at 108. The same reasoning applies in this case. We hold that the district court erred in requiring appellant to bear the cost of adding the requested portions of transcript.

In sum, we reverse and remand for further proceedings both the district court's award of attorney's fees to respondents Thomas and Pitts and its order requiring appellant to include

at his cost certain portions of the trial transcript in the record on appeal. We uphold the judgment of the district court in all other respects.

MANOUKIAN, C. J., SPRINGER, STEFFEN, and GUNDERSON, JJ., concur.