An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOANN PASSER, AS THE ADMINISTRATRIX OF THE ESTATE OF EDWARD MARCINKOWSKI (DECEASED), Appellant, vs. GNLV CORP., A NEVADA CORPOARTION D/B/A GOLDEN NUGGET HOTEL AND CASINO, Respondent. | No. 62631 **FILED** NOV 2 4 2014 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY _____ DEPUTY CLERK |

*ORDER OF AFFIRMANCE*

This is an appeal from a district court judgment on a jury verdict in a torts action. Eighth Judicial District Court, Clark County; Joseph T. Bonaventure, Senior Judge.

Edward Marcinkowski plunged to his death from the second story of the Golden Nugget's parking garage after he misapplied pressure to the gas pedal, instead of the brake pedal, when parking his rental car. Marcinkowski was the second person to misapply a vehicle's gas pedal, go through a cement barrier, and go over the edge of the parking garage. After a third vehicle went over the edge, respondent Golden Nugget Hotel and Casino reinforced its parking structure. Appellant Joann Passer, as administratrix of Edward Marcinkowski's estate, filed a wrongful death suit against the Golden Nugget.

Prior to trial, Judge Kenneth Cory determined that evidence of the Golden Nugget's subsequent repairs and reinforcements to the parking structure were inadmissible unless the Golden Nugget elicited testimony about the repairs. The case was then tried before Senior Judge Joseph Bonaventure. During trial, the Golden Nugget called as witnesses

14-38585

Clint Belka, its corporate representative, and Jeff Baer, its engineering expert. Baer specifically testified about a feasibility study he prepared for the Golden Nugget after the first accident concerning the repair of the entire parking garage. Despite Passer's objections to Baer's testimony, the district court concluded that the testimony did not open the door for admission of evidence regarding the Golden Nugget's subsequent remedial measures. At the conclusion of trial, the jury returned a verdict in favor of the Golden Nugget and Passer appealed.

On appeal, Passer argues that the district court erred in denying her motion for a new trial based on the fact that the court precluded her from admitting evidence of the Golden Nugget's subsequent remedial measures.[1]

Although we conclude that Passer should have been permitted to introduce evidence of the Golden Nugget's subsequent remedial measures pursuant to NRS 48.095(2), Passer failed to demonstrate that this admission would have changed the outcome of the case and we therefore conclude the district court did not abuse its discretion by denying Passer's motion for a new trial.

*Standard of review*

This court reviews both evidentiary rulings and determinations on motions for a new trial for an abuse of discretion. *FGA, Inc. v. Giglio*, 128 Nev. ___, ___, 278 P.3d 490, 497 (2012); *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1505, 970 P.2d 98, 122 (1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11

---

[1]Passer also argues that the district court erred when it denied her motion for judgment as a matter of law. After careful consideration, we conclude that Passer's arguments on this issue lack merit.

(2001). Further, we will not interfere with a district court's exercise of its discretion in an evidentiary ruling "absent a showing of palpable abuse." *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008).

*Evidence of subsequent remedial measures*

Generally, evidence of subsequent remedial measures is inadmissible. NRS 48.095 provides as follows:

> 1. When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

> 2. This section does not require the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, feasibility of precautionary measures, or impeachment.

The district court determined that evidence of the Golden Nugget's subsequent repairs and reinforcements to the parking garage were inadmissible unless it elicited testimony about the repairs. But, if the Golden Nugget introduced evidence about the remedial measures, it would open the door for Passer to present additional evidence on that issue.

Passer argues that the Golden Nugget opened the door for entry of evidence of subsequent remedial measures during three separate occasions: (1) the Golden Nugget's opening statement, (2) the testimony of Clint Belka, and (3) the testimony of Jeff Baer. First, Passer argues that during the Golden Nugget's opening statement, counsel opened the door for additional evidence when he stated that the "new Uniform Building Code wall is also going to fail," and that "if you take either code[], it's going to be the same and . . . the same situation [would] occur." In

response, the Golden Nugget contends that whether the 1997 Uniform Building Code would have prevented the accident is irrelevant to whether it later refitted the building. We conclude that the Golden Nugget's argument has merit because the remarks do not directly mention the retrofit of the parking garage.

Second, Passer argues that when Belka testified that "[i]f we could have reacted quick enough and engineered the system that we -- eventually went in there," he opened the door for evidence of subsequent remedial measures. The Golden Nugget argues that this testimony did not open the door for other evidence because Belka is not an engineer, the testimony was elicited by Passer, and the testimony went to two individual panels that the Golden Nugget had replaced. When Passer objected to this particular testimony from Belka, the district court instructed the jury to disregard the testimony rather than permit Passer to introduce evidence of subsequent remedial measures. The Golden Nugget argues that the district court's instruction properly remedied the testimony. We agree. Belka's statement was offered in response to Passer's question, and the court gave the jury a curative instruction.

Lastly, Passer argues that Baer's testimony also opened the door for admission of evidence of subsequent remedial measures. Although the Golden Nugget was careful to specify that Baer's testimony reflected occurrences prior to Marcinkowski's accident, the Golden Nugget asked Baer if "[t]here were discussions that [he] had with the Golden Nugget as to time frames if there was to be an entire retrofit of the garage," and then asked him to describe the planning process necessary to retrofit the entire garage. Baer testified about a feasibility study and the "prospective time frames" necessary to retrofit the entire garage. Baer's

testimony also included references to "the operational impact" of the retrofit and potential "loss of revenue." The Golden Nugget argues that this testimony shows that it would have been difficult for it to retrofit the parking garage in the nine months between the first accident and Marcinkowski's accident, and this fact would not have been properly rebutted by evidence of the actual retrofit.

Although Baer's testimony was based on work he performed prior to Marcinkowski's accident, his testimony opened the door for additional evidence of the Golden Nugget's subsequent remedial measures. The feasibility study Baer testified about specifically related to the feasibility of retrofitting the garage. Although the study was prepared between the first accident and Marcinkowski's accident, the testimony directly addressed whether it was feasible for the Golden Nugget to have retrofitted the garage and potentially prevented Marcinkowski's accident. Here, the Golden Nugget intentionally elicited testimony from Baer about the feasibility study he prepared, and Passer should have been permitted to introduce evidence of the Golden Nugget's subsequent remedial measures pursuant to NRS 48.095(2).

Having determined that the district court abused its discretion in making this evidentiary ruling, we now must determine whether this error warrants reversal and remand for a new trial, or whether this error was harmless. *See Beattie v. Thomas*, 99 Nev. 579, 586, 668 P.2d 268, 273 (1983) (noting that an error in evidence admissibility must be prejudicial in order to warrant reversal and remand, and an error is prejudicial if the error "'so substantially affected [the complaining party's] rights that it could be reasonably assumed that if it were not for the alleged error[ ], a

different result might reasonably have been expected'" (quoting *El Cortez Hotel, Inc. v. Coburn,* 87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971))).

While we conclude that the district court erred in not allowing the evidence of the Golden Nugget's subsequent remedial measures, Passer did not argue, and the dissent has failed to demonstrate, how the error "might reasonably have been expected" to produce a different result. *Beattie,* 99 Nev. at 586, 668 P.2d at 273 (internal quotations omitted). We cannot "imply[ ]," as suggested by the dissent, and are therefore unable to conclude, that the inclusion of the evidence would have resulted in a different verdict. The evidence clearly demonstrates the panels were constructed in accordance with the Uniform Building Code. The feasibility study, although produced before Marcinkowski's accident, would not have afforded the Golden Nugget adequate time to make repairs that would have prevented his death. Further, there is ample evidence in the record to conclude that Marcinkowski's negligence in misapplying the accelerator pedal was the contributing factor to his death. Expert testimony elicited at trial indicated that Marcinkowski's misapplication caused his car to reach a speed of between six to nine miles per hour at the point of the barrier, and a speed of six-tenths of a mile per hour was sufficient to break through the barrier.

For the reasons set forth above, we ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

 

cc: Chief Judge, The Eighth Judicial District Court
Hon. Joseph T. Bonaventure, Senior Judge
Hon. Kerry Louise Earley, District Judge
Hon. Kenneth Cory, District Judge
Israel Kunin, Settlement Judge
Eglet Law Group
Cisneros & Marias
Eighth District Court Clerk

CHERRY, J., concurring in part and dissenting in part:

I agree with my colleagues that the district court abused its discretion in making the evidentiary ruling that precluded Passer from producing evidence of subsequent remedial repairs and reinforcement to the parking structure.

I do not agree with my colleagues that the district court was correct in denying Passer's motion for a new trial. The majority bases its affirmance of the defense verdict and the denial of the motion for a new trial on the fact that Passer did not argue that the inclusion of the evidence of subsequent remedial measures would have resulted in a different verdict.

The majority has become a "fact finder," and uses its own analysis of the facts to deny Passer a new trial even with the inclusion of the evidence of subsequent remedial measures and/or repairs.

By filing a motion for a new trial, Passer is certainly implying that, but for the evidentiary error, the verdict would have been in her favor.

At the new trial, the defense would of course be able to raise the affirmative defense of comparative negligence on behalf of the deceased and then the new jury could determine with the inclusion of subsequent remedial measures whether the deceased was negligent and whether his negligence was the greater cause of his death.

A new trial seems to me to be the fairest vehicle of deciding liability and damages, if any.

For the above reasons, I would grant Passer a new trial.

_____, J.
Cherry