140 Nev., Advance Opinion 36

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN RE PARAMETRIC SOUND CORPORATION SHAREHOLDERS' LITIGATION. | No. 83598 |

PAMTP, LLC,
Appellant,
vs.
KENNETH F. POTASHNER; VTB HOLDINGS, INC.; STRIPES GROUP, LLC; SG VTB HOLDINGS, LLC; JUERGEN STARK; AND KENNETH FOX,
Respondents.

FILED

JUN 06 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

| | |
|---|---|
| IN RE PARAMETRIC SOUND CORPORATION SHAREHOLDERS' LITIGATION. | No. 84971 |

KENNETH F. POTASHNER; VTB HOLDINGS, INC.; STRIPES GROUP, LLC; SG VTB HOLDINGS, LLC; JUERGEN STARK; AND KENNETH FOX,
Appellants,
vs.
PAMTP, LLC,
Respondent.

| | |
|---|---|
| IN RE PARAMETRIC SOUND CORPORATION SHAREHOLDERS' LITIGATION. | No. 85358 |

PAMTP, LLC,
Appellant,
vs.
KENNETH F. POTASHNER; VTB HOLDINGS, INC.; STRIPES GROUP, LLC; SG VTB HOLDINGS, LLC;

SUPREME COURT
OF
NEVADA

(O) 1947A

24-19776

JUERGEN STARK; AND KENNETH
FOX,
Respondents.

Consolidated appeals from district court orders granting judgment on partial findings under NRCP 52(c) (Docket No. 83598), denying attorney fees (Docket No. 84971), and awarding costs (Docket No. 85358) in a corporate shareholder action. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed (Docket No. 83598), reversed and remanded (Docket No. 84971), and affirmed in part and reversed in part (Docket No. 85358).*

McDonald Carano LLP and George F. Ogilvie III, Rory Kay, and Chelsea Latino, Las Vegas; Holwell Shuster & Goldberg LLP and Daniel M. Sullivan, Scott M. Danner, and Jordan Pietzsch, New York, New York, for PAMTP, LLC.

Holland & Hart LLP and J. Stephen Peek and Robert J. Cassity, Las Vegas; Sheppard, Mullin, Richter & Hampton LLP and John P. Stigi, III, Los Angeles, California, for Kenneth F. Potashner.

Snell & Wilmer, LLP, and Richard C. Gordon, Kelly H. Dove, and Bradley T. Austin, Las Vegas; Dechert LLP and Joshua D. N. Hess, San Francisco, California, and David A. Kotler, New York, New York, for Kenneth Fox; SG VTB Holdings, LLC; Juergen Stark; Stripes Group, LLC; and VTB Holdings, Inc.

BEFORE THE SUPREME COURT, STIGLICH, PICKERING, and PARRAGUIRRE, JJ.

 

By the Court, PARRAGUIRRE, J.:

In *Parametric Sound Corp. v. Eighth Judicial District Court* (*Parametric I*), 133 Nev. 417, 401 P.3d 1100 (2017), a group of shareholders filed a class action lawsuit challenging Parametric Sound Corporation's merger with VTB Holdings, Inc. (VTBH). On writ review, we determined that the complaint should be dismissed for failure to plead a direct, as opposed to a derivative, claim but granted the class leave to replead certain claims (equity expropriation claims) that *may* have been direct pursuant to *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), *overruled by Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251 (Del. 2021). *Parametric I*, 133 Nev. at 428-29, 401 P.3d at 1109-10. The *Parametric I* parties subsequently settled, but PAMTP, LLC—comprising former shareholders who opted out of the *Parametric I* class settlement—brought this distinct case in May 2020. Adhering to *Parametric I*, PAMTP's complaint couched its claims as "equity expropriation" claims that were direct under *Gentile*. The district court disagreed, finding that PAMTP had failed to plead a direct claim, and granted respondents judgment under NRCP 52(c) in September 2021.

We conclude that the district court correctly determined that PAMTP failed to plead a direct claim. Following the judgment, but prior to PAMTP's appeal, the Delaware Supreme Court overruled *Gentile* and held that most equity expropriation claims are "exclusively derivative." *Brookfield*, 261 A.3d at 1266. *Gentile*'s overruling largely forecloses a direct claim under a theory of equity expropriation. Moreover, we conclude that PAMTP has not satisfied Delaware's "direct harm test" adopted by this court in *Parametric I*. 133 Nev. at 427, 401 P.3d at 1108. Thus, the district court did not err in granting respondents judgment under NRCP 52(c), and

 

we affirm the appeal in Docket No. 83598. However, we reverse in part the district court's costs award to respondents in consolidated Docket No. 85358 and reverse and remand the district court's order denying respondents attorney fees in consolidated Docket No. 84971.

## FACTS AND PROCEDURAL HISTORY

Parametric was a small, Nevada-incorporated, publicly traded company that produced audio technology for home entertainment, video games, and other related uses. In January 2014, Parametric merged with VTBH, a larger company that was most well-known for producing audio headsets for video games via its subsidiary, Turtle Beach. As we explained in *Parametric I*, the parties structured the merger as a "reverse triangular merger," whereby VTBH would merge into a Parametric subsidiary, and Parametric would issue new shares to VTBH owners as consideration. 133 Nev. at 419, 401 P.3d at 1102-03. Thus, unlike in a traditional merger, Parametric's shareholders did not receive cash or stock in exchange for their shares. Rather, they kept their shares, but their combined ownership was reduced from 100% to roughly 19% due to the dilutive effect of the new share issuance. VTBH owners, meanwhile, received about 81% of shares in the newly created company, which was renamed Turtle Beach Corporation.

Following the merger, a group of Parametric shareholders filed a class action lawsuit against Parametric, VTBH, and all six members of Parametric's board of directors, which included Parametric's CEO, Kenneth Potashner. *See Parametric I*, 133 Nev. at 420, 401 P.3d at 1103. The complaint alleged (1) breach of fiduciary duties as to Parametric's board and (2) aiding and abetting these fiduciary breaches by Parametric and VTBH. *Id.* As explained above, we determined on writ petition that the complaint should be dismissed for failure to plead a direct claim but granted the class members leave to replead under *Gentile*. *Id.* at 428-29, 401 P.3d at 1109-

10. The class repleaded, but the parties stipulated to a settlement in November 2019. Pursuant to the settlement, the district court entered a final judgment and order of dismissal with prejudice on May 19, 2020.

PAMTP—comprising former Parametric shareholders[1] who opted out of the *Parametric I* class settlement—brought this distinct case on May 20, 2020. Similar to *Parametric I*, the complaint alleged claims for (1) breach of fiduciary duty against five of the six members of Parametric's board[2] (collectively Directors) and (2) aiding and abetting this breach of fiduciary duty against VTBH; VTBH's owners Stripes Group, LLC, and SG VTB Holdings, LLC; VTBH's CEO Juergen Stark; and Kenneth Fox, Managing General Partner of Stripes Group and manager of SG VTB Holdings.

On the eve of the August 2021 bench trial, PAMTP settled with all Directors except Potashner. Accordingly, the breach of fiduciary duty claim proceeded *only* against Potashner, whose conduct over the course of the merger forms the basis of PAMTP's allegations with regard to the breach of fiduciary duty claim. PAMTP asserts that Potashner knew the merger would be unfair to Parametric but misled Parametric's shareholders and directors by painting an overly optimistic financial outlook resulting

---

[1]The district court found that each individual member of PAMTP "held Parametric common stock on the date the merger closed. Each of them, however, sold that stock prior to assigning their claims to [PAMTP] in April 2020." This presents a factual difference from *Parametric I*, where class members still held shares at the time we issued our decision. *See Parametric I*, 133 Nev. at 427-28, 401 P.3d at 1108.

[2]These included Potashner, Elwood Norris, Seth Putterman, Robert Kaplan, and Andrew Wolfe. Director James Honoré, whom the *Parametric I* complaint had named but not made any allegations against, was not named in PAMTP's complaint. 133 Nev. at 420 n.7, 401 P.3d at 1103 n.7.

from the merger while withholding information that was vital to an accurate evaluation. PAMTP also alleges that Potashner purposefully stalled efforts to grow Parametric's business in the months leading up to the merger so that the company would not increase in value and the merger would be less costly to VTBH. PAMTP further alleges that Potashner took these actions in order to enrich himself via the merger.

Despite remarking that "this case smells so bad," the district court granted judgment for VTBH, Potashner, Stripes Group, SG VTB Holdings, Stark, and Fox (hereinafter, respondents) pursuant to NRCP 52(c). The district court denied respondents' subsequent motion for attorney fees but granted respondents $1,169,983.86 in costs. PAMTP now appeals the judgment (Docket No. 83598) and the costs order (Docket No. 85358). Respondents appeal the order denying attorney fees (Docket No. 84971).

## DISCUSSION

*The district court did not err in granting respondents judgment pursuant to NRCP 52(c)*

"NRCP 52(c) allows the district court in a bench trial to enter judgment on partial findings against a party when the party has been fully heard on an issue and judgment cannot be maintained without a favorable finding on that issue." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 377, 283 P.3d 250, 254 (2012). "[I]n entering a Rule 52(c) judgment, the trial judge is not to draw any special inferences in the nonmovant's favor . . . [and] since it is a nonjury trial, the court's task is to weigh the evidence." *Id.* (internal quotation marks omitted). "Where a question of fact has been determined by the trial court, this court will not reverse unless the judgment is clearly erroneous and not based on

substantial evidence." *Id.* (quoting *Kockos v. Bank of Nev.*, 90 Nev. 140, 143, 520 P.2d 1359, 1361 (1974)).

Here, the district court granted respondents an NRCP 52(c) judgment on three bases. First, PAMTP failed to establish that its claims were direct, as opposed to derivative. Second, PAMTP failed to rebut the business judgment rule presumption under NRS 78.138(3) and failed to show "actual fraud in the transaction" as required by NRS 78.211(1). Third, because PAMTP failed to establish a breach of fiduciary duty claim against Potashner, it had no claim for aiding and abetting against the nondirector parties.

As discussed below, we conclude that the district court correctly found that PAMTP failed to plead a direct claim. This finding alone warrants an NRCP 52(c) judgment in favor of respondents. Thus, we need not address the district court's other bases for granting respondents judgment.

*PAMTP did not plead a direct claim*

"A *derivative* claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation." *Parametric I*, 133 Nev. at 423, 401 P.3d at 1105 (emphasis added) (quoting *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 19, 62 P.3d 720, 732 (2003)). "Alternatively, shareholders have standing to bring suit for *direct* injuries they have suffered and that are separate from any injury the corporation may have suffered . . . ." *Id.* (emphasis added).

In *Parametric I*, this court "align[ed] [its] jurisprudence with Delaware's" and adopted the "direct harm test" set forth in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), to determine whether an action is direct or derivative. 133 Nev. at 427, 401 P.3d at 1108. This test asks "(1) who suffered the alleged harm (the corporation or the

SUPREME COURT
OF
NEVADA

(O) 1947A

7

suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* (quoting *Tooley*, 845 A.2d at 1033).

The *Parametric I* class pleaded their claims as direct pursuant to *Cohen v. Mirage Resorts, Inc.*, which held that shareholder claims challenging the validity of a merger due to director misconduct are direct. *Parametric I*, 133 Nev. at 422, 424, 401 P.3d at 1104, 1106. This court held that the class action could not proceed as direct under *Cohen* because their claims did not challenge a merger, given that the *Parametric I* shareholders still held shares of Parametric pursuant to the reverse triangular structure. *Id.* at 427-28, 401 P.3d at 1108. Still, this court noted that the class had alleged "[e]quity [d]ilution"—"that their stock's value was improperly diluted when Parametric issued new shares to compensate the [VTBH] shareholders." *Id.* at 428, 401 P.3d at 1109. The court explained that, under *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), Delaware recognized "a certain class of equity dilution claims," called "*equity expropriation claims*," as both direct and derivative in nature. *Id.* at 429, 401 P.3d at 1109 (emphasis added). "Equity expropriation claims involve a controlling shareholder's or director's expropriation of value from the company, causing other shareholders' equity to be diluted." *Id.* Because the class complaint "suggest[ed] equity dilution," this court "conclude[d] that the shareholders should be allowed to amend their complaint to articulate equity expropriation claims, *if any such claims exist.*" *Id.* at 429, 401 P.3d at 1109 (emphasis added).

Heeding *Parametric I*'s direction, PAMTP couched its claims—which were nearly identical to those brought in *Parametric I*—as direct "Equity Expropriation" claims pursuant to *Gentile*. PAMTP alleged that

SUPREME COURT
OF
NEVADA

(O) 1947A

8

the merger, accomplished via breaches of fiduciary duty, diluted Parametric shareholders' equity interests. The district court disagreed, concluding that because PAMTP failed to prove that Parametric had a controlling shareholder, the complaint had not met an essential element of equity expropriation under Nevada law. *Cf. Parametric I*, 133 Nev. at 429, 401 P.3d at 1109 (explaining that "[e]quity expropriation claims involve a *controlling shareholder's* or director's *expropriation* of value from the company" (emphases added)). We note that this conclusion was erroneous because *Parametric I* clearly allowed for a *Gentile* claim via a "controlling shareholder's *or director's* expropriation of value," *id.* (emphasis added), and Potashner's director status thus may have foreseeably given rise to a direct equity expropriation claim.[3] As we explain below, however, the district court's error was harmless as a result of *Gentile*'s overruling by *Brookfield Asset Management v. Rosson*, 261 A.3d 1251 (2021).

The Delaware Supreme Court overruled *Gentile* only days after the district court issued its order granting NRCP 52(c) relief. *Brookfield*, 261 A.3d at 1280. *Brookfield* concluded that "when a corporation exchanges equity for assets of a stockholder who is already a controlling stockholder for allegedly inadequate consideration, the dilution/overpayment claim is *exclusively derivative*." 261 A.3d at 1266 (emphasis added). However, the court noted that these claims may become direct if the transaction results "in a shift in control from a diversified group of public equity holders to a controlling interest," a circumstance where *Revlon, Inc. v. MacAndrews &*

---

[3]We further note that the district court erroneously concluded that Potashner's severance package—which included a severance payment and accelerated vesting of incentive stock options—was the "expropriation" giving rise to PAMTP's claim.

*Forbes Holdings, Inc.*, 506 A.2d 173, 182 (1986), "already provides for a direct claim."[4] *Brookfield*, 261 A.3d at 1266-67.

On appeal, PAMTP argues that its claims are direct under both *Brookfield* and *Tooley*. First, it argues that its claims fall into the subset of claims deemed direct in *Brookfield* because they "arise out of an improper *transfer* of the *shareholders' control* over Parametric to a *new controlling shareholder*." (Emphases added.) Second, it asserts the claims are direct under *Tooley* because (1) the shareholders suffer the harm of losing control of the corporation and (2) relief—compensation for the loss of control—would go to the shareholders rather than the corporation. *See* 845 A.2d at 1033.

We agree with respondents, however, that *Gentile*'s overruling largely foreclosed a direct claim under the theory of equity expropriation set forth in PAMTP's complaint. That said, *Gentile*'s overruling is not *completely* dispositive. As PAMTP's briefing indicates, *Tooley*'s analysis of whether the harm and benefit is directed at shareholders or the corporation is pivotal to a determination of whether a claim is direct or derivative. After all, *Brookfield* overruled *Gentile* because, in part, *Gentile* was in "analytical tension" and "irreconcilable" with *Tooley*. *Brookfield*, 261 A.3d at 1267. Pursuant to *Tooley*, *Brookfield* determined that harm incurred by stockholders in an equity expropriation via the dilution of economic and voting power "was not *independent* of the harm to the [corporation], but rather flowed indirectly to them in proportion to, and via their shares in,

---

[4]*Revlon* holds that when the takeover of a company is inevitable, directors owe a fiduciary duty of "maximization of the company's value at sale for the stockholders' benefit," i.e., "getting the best price for the stockholders at a sale of the company." 506 A.2d at 182.

[the corporation]" and thus could only support a derivative claim. 261 A.3d at 1268. Here, PAMTP's complaint alleged that "[respondents] conspired to expropriate significant value from [Parametric], which caused all other stockholders' equity interests to be diluted" and that "[the] stock issuance . . . specifically diluted plaintiffs' and the rest of Parametric's stockholder base." Like *Brookfield*, it is challenging to see how this alleged harm, while plausibly direct in some respects, was entirely *independent* of the harm incurred by Parametric pursuant to *Tooley*.

We further agree with respondents that PAMTP's claims do not intuitively fit within the "shift in control" exception identified in *Brookfield*. First, PAMTP failed to plead a *Revlon* claim because it alleged that the shareholders were harmed by a *dilution* of their equity interest due to expropriation and not the *sale* of their shares for which the directors failed to fetch a fair price for surrendering control of the company. *Cf. Revlon*, 506 A.2d at 182 (holding that when the takeover of a company is inevitable, directors owe a fiduciary duty of "maximization of the company's value at sale for the stockholders' benefit"). Second, *Brookfield* implied that its exception applies where there is a change in control from a "diversified investor base to a *single controlling stockholder.*" *Brookfield*, 261 A.3d at 1276 n.133 (emphasis added) (internal quotation marks omitted). This was not the case here, where PAMTP's control of the company was diluted by issuance of new shares amongst VTBH shareholders and not transferred to a single person or entity.[5]

---

[5]Finally, we also note that *Revlon* appears to be in tension with Nevada corporate law, but we will not directly address that issue here, seeing that PAMTP has not pleaded a *Revlon* claim. *See* NRS 78.138(5) ("Directors and officers are not required to consider, as a dominant factor,

SUPREME COURT
OF
NEVADA

(O) 1947A

11

Thus, we conclude that while the district court applied erroneous reasoning to reach its determination, it correctly determined that PAMTP failed to plead direct claims. Because PAMTP's claims are not direct, respondents were entitled to judgment under NRCP 52(c). As comprised of former shareholders, PAMTP has no standing to pursue a derivative claim. *Cf. Cohen*, 119 Nev. at 19, 62 P.3d 732. Therefore, we need not address the merits of PAMTP's breach of fiduciary duty and aiding and abetting claims because the district court correctly granted judgment to respondents.

*The district court abused its discretion in awarding respondents pre-complaint costs*

Following judgment, the district court awarded respondents a total of $1,169,983.86 in costs as the "prevailing party" under NRS 18.020. Nearly 70% of this sum (about $857,000) included costs that respondents incurred litigating the class action claims in *Parametric I*, before PAMTP filed its complaint on May 20, 2020. PAMTP challenges the entire costs award and alternatively asserts that the pre-complaint costs must be stricken.

"A district court's decision regarding an award of costs will not be overturned absent a finding that the district court abused its discretion." *Vill. Builders 96, LP v. U.S. Labs., Inc.*, 121 Nev. 261, 276, 112 P.3d 1082, 1092 (2005). Here, because the district court did not err in entering an

---

the effect of a proposed corporate action upon any particular group or constituency having an interest in the corporation."); *Guzman v. Johnson*, 137 Nev. 126, 131-32, 483 P.3d 531, 537 (2021) (holding that the "inherent fairness standard," which obligated directors "to show [a transaction's] inherent fairness from the viewpoint of the corporation and those interested therein," no longer applies in Nevada (internal quotation marks omitted)).

NRCP 52(c) judgment for respondents, they were entitled to costs as the "prevailing party" pursuant to NRS 18.020. Thus, the district court did not abuse its discretion in awarding respondents costs.

We agree with PAMTP, however, that the district court abused its discretion by awarding pre-complaint costs. To provide brief additional background, in January 2019—following the *Parametric I* decision and the shareholders' subsequent amended complaint in that action—the district court certified a class consisting of "[a]ll persons and/or entities that held shares of [Parametric] common stock on January 15, 2014," ostensibly for purposes of reaching a settlement. Shareholders were provided notice and opportunity to opt out of the class and, later, to object to the stipulated settlement. PAMTP members opted out of the settlement class and filed a new, separate complaint. PAMTP later agreed to consolidate its new lawsuit with the settled class action in June 2020.

In awarding pre-complaint costs, the district court relied on the following language from PAMTP's complaint identifying the shareholder plaintiffs:

> The shareholders identified in the immediately preceding paragraph lawfully and validly *assigned* to [PAMTP] their *rights, titles and interests in any claims* arising from their ownership of Parametric stock, including any and all claims arising from or related to the Merger against Parametric or any other entity or individual that could be liable for the acts and/or omissions alleged in the litigation entitled *In re Parametric Sound Corporation Shareholders' Litigation* . . . (the "Class Action Litigation").

(Emphases added.) The district court read this paragraph to mean that by virtue of PAMTP's "assign[ment]" of certain shareholders' "rights, titles and interests" arising from the January 2014 merger, PAMTP "received and

SUPREME COURT
OF
NEVADA

(O) 1947A

13

accepted all risks and benefits of the class litigation starting from when the individual assignors became involved in the lawsuit." This was a misreading. Instead, the paragraph explains that shareholders who opted out of the settlement assigned PAMTP their rights to pursue claims arising from the *same factual allegations* as the class action. Thus, PAMTP merely incorporated by reference the allegations in the class action. There is nothing to suggest that by doing so, PAMTP "accepted all risks and benefits of the class litigation," including liability for fees in that action. As PAMTP persuasively notes, "the whole point of opting out was to *forgo*" the risks and benefits of the class action—including any share of the settlement.[6]

Nor is the district court's second reason for awarding pre-complaint costs persuasive. The court concluded that because PAMTP would have sought "entitlement to pre-judgment interest accruing from the date of dilutive issuance, January 15, 2014," had it been the prevailing party, it would be inconsistent to bar respondents from recovering costs incurred over the same period. But as PAMTP again persuasively argues, this "interest" it would have foreseeably sought pertained to its prospective *damages*, a distinct category from *costs*.[7]

---

[6]To this point, we note that PAMTP stipulated to consolidation on the basis that the district court's findings, prior rulings, and discovery in the previous class action suit would make subsequent litigation more efficient. But PAMTP emphasized that it would "not be bound by" the district court's May 2020 order dismissing the class action pursuant to the settlement.

[7]We also agree with PAMTP that the June 2020 consolidation does not create liability for pre-complaint costs because "[c]onsolidated cases retain their separate identities." *In re Est. of Sarge*, 134 Nev. 866, 870-71, 432 P.3d 718, 722 (2018).

Thus, seeing that the district court's award of pre-complaint costs was an abuse of discretion, we reverse in part that portion of the costs award in Docket No. 85358. The remainder of the costs award is affirmed.

*The district court abused its discretion in denying respondents' motion for attorney fees*

"We review a district court's decision regarding an award of attorney fees . . . for an abuse of discretion." *Las Vegas Metro. Police Dep't v. Blackjack Bonding, Inc.*, 131 Nev. 80, 89, 343 P.3d 608, 614 (2015). Following trial, respondents moved for attorney fees under NRCP 68, which permits an award of attorney fees and costs to a party who makes an offer of judgment when "the offeree rejects an offer and fails to obtain a more favorable judgment." NRCP 68(f)(1). Respondents previously made two offers of judgment to PAMTP, initially for $1 on May 20, 2020, and later for $150,000 on May 28, 2021, both of which excluded a separate award of costs, attorney fees, and interest, and both of which PAMTP rejected. The district court denied respondents' motion for attorney fees. On appeal, respondents argue that NRCP 68 entitles them to fees because PAMTP failed to obtain a judgment in its favor at trial, as the district court granted an NRCP 52(c) judgment to respondents and PAMTP received $0.

The district court correctly concluded that the $1 offer did not entitle respondents to fees under NRCP 68 because this offer was neither reasonable nor made in good faith. *Cf. Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983) (explaining that in exercising its discretion to award fees and costs under NRCP 68, the district court must evaluate, among other factors, "whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith" and "whether the fees sought by the offeror are reasonable and justified in amount"). We see no error with respect to this conclusion.

 

With respect to the $150,000 offer, the district court determined that "the burden is upon [respondents], as the movants, to demonstrate the $150,000 exceeded the amount [PAMTP] incurred in attorney's fees, costs and expenses between May 20, 2020 and May 28, 2021." The district court also surmised that because *respondents* had incurred over $3 million in attorney fees during the period between the two offers of judgment, *PAMTP's* pre-offer legal fees likely exceeded $150,000. The court thus denied attorney fees to respondents with respect to the $150,000 offer because respondents "did not meet their burden." This was an abuse of discretion, as it was not respondents' burden to offer proof of PAMTP's attorney fees. *See Aguilar v. Lucky Cab Co.*, 140 Nev., Adv. Op. 1, 540 P.3d 1064, 1067, 1069 (2024) (indicating that it is an NRCP 68 offeree's burden to establish its costs, expenses, interest, and allowable attorney fees that were otherwise excluded from the offer of judgment). Moreover, it was improper for the district court to have considered PAMTP's attorney fees because there is no indication that PAMTP is entitled to fees "by law or contract" pursuant to NRCP 68(g). *See id.* at 1068; *see also Lee v. Patin*, No. 83213, 2024 WL 238082, at *2 (Nev. Jan. 22, 2024) (Order of Affirmance) (holding that NRCP 68(g) permits courts to consider attorney fees only when fees are "permitted by law or contract" and that appellant, who rejected offer of judgment and then lost at the summary judgment stage, "point[ed] to no underlying contract or statute supporting his argument that his fees should have been considered" for NRCP 68(g) purposes). It was also improper for the district court to have guessed as to the amount of PAMTP's fees without any evidence before it.

Further, without any evidence as to PAMTP's pre-offer taxable costs, expenses, or interest, it is plain that PAMTP did not attain a

judgment at trial more favorable than respondents' $150,000 offer.[8]  *See* NRCP 68(g).  Thus, respondents are entitled to attorney fees pursuant to NRCP 68(f).  We reverse the district court's order denying attorney fees to respondents and remand for the district court to determine the amount of fees it may properly award pursuant to *Beattie* and *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).[9]

### CONCLUSION

We affirm in part and reverse in part the consolidated appeals. The district court did not err in granting judgment on partial findings to respondents, given PAMTP's failure to plead direct claims.  Therefore, we affirm the appeal in Docket No. 83598.  We reverse in part the costs award in Docket No. 85358, however, because the district court erroneously determined that respondents were entitled to costs predating PAMTP's May 2020 complaint.  Finally, we reverse the district court's order denying

---

[8]We are not persuaded that, under these facts, PAMTP's $400,000 pretrial settlement with the Directors may be considered as a judgment for purposes of NRCP 68 analysis.

[9]The district court properly demonstrated that it considered the first three *Beattie* factors with respect to each offer.  *Schwartz v. Est. of Greenspun*, 110 Nev. 1042, 1049, 881 P.2d 638, 642 (1994) ("The district court need not . . . make explicit findings as to all of the factors where support for an implicit ruling regarding one or more of the factors is clear on the record.").  However, we see no indication that the district court considered whether the fees sought by respondents were "reasonable and justified in amount" pursuant to the fourth *Beattie* factor.  99 Nev. at 588, 668 P.2d at 274.  The district court must, therefore, consider whether respondents' requested $3,915,171.30 in attorney fees incurred from the time of the second offer is "reasonable and justified" under *Beattie* and *Brunzell*.  *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 81, 319 P.3d 606, 615 (2014) (explaining that the district court must consider the *Brunzell* factors as part of its analysis under *Beattie*'s fourth factor).

 


respondents' request for attorney fees in Docket No. 84971 and remand for the district court to determine the amount of fees to which respondents are entitled pursuant to *Beattie* and *Brunzell*.

_____, J.
Parraguirre

We concur:

_____, J.
Stiglich

_____, J.
Pickering

Supreme Court
of
Nevada

(O) 1947A